**In re Lester George BLACK, Debtor.**

**Bankruptcy No. 85C–02395.**

United States Bankruptcy Court, D. Utah.

Nov. 18, 1986.

George H. Speciale, Salt Lake City, Utah, for movants Helen Hooper and Helmac Investments, Inc. dba UBI Business Brokers.

Scott C. Pierce, McKay, Burton & Thurman, Salt Lake City, Utah, for debtor.

## MEMORANDUM DECISION

GLEN E. CLARK, Bankruptcy Judge.

The above-entitled matter is now before the Court on a motion by Helen Hooper and Helmac Investments, Inc. dba UBI Business Brokers ("movants") for an order of the Court modifying the automatic stay pursuant to § 362(d) of the Bankruptcy Code. Specifically, the movants have requested a determination by the Court that the automatic stay is not applicable to the prosecution of a lawsuit in state court, to which the debtor is a named defendant, and in which the movants desire to file a cross-claim. The issue presently before the Court is whether a cross-claim against the debtor for indemnification or contribution, arising out of a prepetition business transaction, is enjoined by the automatic stay where, under state law, the claimant's cause of action would first arise upon the commencement of postpetition litigation against it.

The facts giving rise to this motion are not in material dispute. In May 1984, the movants, as brokers for the sale of a business owned by Ronald Moulton and Mohsen Falamaki known as "Mr. Video,"

presented the debtor as a potential purchaser of the business. The sales agreement provided for partial financing of the transaction by the execution of a promissory note. To secure that obligation, Moulton and Falamaki were to take a security interest in the personal property of the business.

The sale was subsequently closed on May 10, 1984. The parties executed the documents necessary to consummate the sale, including a UCC–1 Financing Statement in favor of Moulton and Falamaki. Moulton and Falamaki's financing statement, however, was not timely filed.

The day following the closing, the debtor consummated a loan transaction with Zion's First National Bank ("Zion's") for the financing of the business. Zion's timely filed its financing statement, thereby perfecting a prior security interest in the business assets.

The debtor filed his Chapter 13 petition on July 25, 1985.

On or about February 22, 1986, Moulton and Falamaki commenced an action in the Third Judicial District Court for the State of Utah against the debtor and the movants. The plaintiffs in that action sought judgment against the defendants for conspiracy and fraud, as well as a judgment against the movants herein for the recovery of brokerage commissions. Movants now desire to enter a cross-claim against the debtor for indemnification or contribution for any liability which movants may have to Moulton and Falamaki.[1] Movants have taken the position herein that their indemnification claim against the debtor is a postpetition claim and, therefore, they

are not enjoined by the automatic stay provisions of § 362.

## DISCUSSION

Section 362 of the Bankruptcy Code provides that the filing of a petition operates as a stay of

the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

The automatic stay, therefore, applies to (1) a proceeding that was or could have been commenced prepetition; or (2) an action to recover a prepetition claim against the debtor.

The lawsuit which is the subject of this motion was not commenced prepetition, but rather was filed seven months following the commencement of this Chapter 13 case.

The threshold issue to the resolution of this case is whether the movants could have commenced an action for contribution or indemnification prior to the debtor's bankruptcy filing. The general rule is that a cause of action for indemnification does not accrue until the indemnitee has suffered an actual loss. 41 AM.JUR.2d *Indemnity* § 32 (1968); Annot., A.L.R.3d 867 (1974). The Utah Supreme Court adopted this general rule in *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984):

As a general rule, a cause of action for indemnity does not arise until the liabili-

---

1. Movants assert in their motion that the debtor is not a party to the lawsuit now pending in state district court. It is not entirely clear from the record before the Court what the basis for that assertion could be. The debtor is listed as a defendant on the complaint, although there is no evidence before the Court as to whether the debtor was actually served by appropriate process. It is also possible that the movants are taking the position that the lawsuit as it relates to the debtor was filed in violation of the automatic stay and is therefore void as to him.

Whatever the basis of the movants' claim may be, and without addressing its validity, the Court believes, for the purpose of this motion, that it is irrelevant whether the debtor is now a party to the action and the movants are seeking to file a cross-claim, or whether the debtor is not presently a party and the movants are seeking permission to file a third-party complaint. The legal and equitable considerations concerning the automatic stay would be identical.

ty of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment.

Although modern pleading rules allow a defendant to file a third-party complaint in the original action, alleging indemnification should the defendant be found to be liable, the indemnitor's liability generally is not fixed until the defendant is liable on a judgment. Based on applicable Utah law, the Court finds that movants' claim for contribution against the debtor could not have been asserted prepetition by the commencement of state court litigation.

Since the movants could not have commenced an action in state court before the bankruptcy filing, the determinative issue before the Court is whether movants' cross-claim is a "claim" against the debtors "that arose before the commencement of the case." The movants contend that § 362(a)(1) does not apply to prepetition acts which give rise to a postpetition cause of action.

It is undisputed between the parties that all of the transactions which form the basis of the movants' cross-claim occurred prepetition. Moreover, movants do not allege that the debtor concealed any material facts from them which might toll the accruing of their cause of action. *See,* U.C.A. § 78–12–26(3). Nor do movants point to any particular facts relating to the transaction which they failed to discover prepetition. Rather, movants rely solely on the decision of the Court of Appeals for the Third Circuit in *Avellion & Bienes v. M. Frenville Co., Inc. (In the Matter of M. Frenville Co., Inc.),* 744 F.2d 332 (3rd Cir. 1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), for the proposition that they did not have a claim against the debtor until Moulton and Falamaki filed suit against them. The movants take the position that they had no way of anticipating their potential liability and, hence, their claim against the debtor, until they were sued by Moulton and Falamaki.

In *Frenville,* an accounting firm which had prepared prepetition audited financial statements for the debtor was sued by several of the debtor's bank creditors who alleged that the accounting statements were negligently and fraudulently prepared. The accounting firm then sought relief from the stay in bankruptcy court to enable it to implead the debtor as a third-party defendant on contribution and indemnification theories. The Bankruptcy Court held that the debtor's liability stemmed from prepetition acts and that the automatic stay applied, and it refused to grant relief from the stay. The District Court affirmed, but the Court of Appeals reversed.

Although the Third Circuit recognized the broad concept of "claim" under § 101(4), it relied principally on the "right to payment" language in that provision. The Court held that "right to payment" was a threshold requirement and that

> while federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, *absent overriding federal law,* "is to be determined by reference to state law." *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946).

744 F.2d at 337, (emphasis added). Finding no "overriding federal law," the Court concluded that the claim did not arise prepetition because under New York state law the accounting firm did not have a cause of action based on indemnity or contribution until it was sued by the creditor-banks. Since there was no enforceable prepetition cause of action, the accounting firm had no right to payment and, ergo, no prepetition bankruptcy claim. The Court concludes:

> In the case at bar, A & B had an *unmatured, unliquidated, disputed claim* when the banks brought suit against it in New York state court. Until the banks instituted suit, however, A & B did not have any claim or cause of action based on indemnity or contribution against the Frenvilles.... Although arguably A & B may have had some claim at the time

the Frenvilles gave it allegedly false information, it did not have a claim for indemnification or contribution until the banks filed their suit. Thus, by its very terms, the automatic stay provision of § 362(a) is inapplicable to A & B's suit.

774 F.2d at 337 (emphasis added).

The decision in *Frenville* has been severely criticized by other courts which have considered these issues. *See, Baldwin-United Corp. v. Named Defendants (In the Matter of Baldwin-United Corp.)*, 48 B.R. 901 (Bkrtcy.S.D.Ohio 1985) (which declined to follow *Frenville* because of "the Court's failure to distinguish between 'claim' as defined in 11 U.S.C. § 101(4) and a cause of action for indemnity or contribution under state law," noting that "a 'right to payment' under the definition of 'claim' includes obligations which are neither matured, nor liquidated, nor fixed."); *In re Yanks*, 49 B.R. 56 (Bkrtcy.S.D.Fla.1985) ("chooses not to follow the *Frenville* decision" since, among other problems, its analysis "would leave to the vagaries of the timing of events by third parties such obviously crucial issues of bankruptcy relief as priority of distribution and dischargeability of obligations."); *In re Johns-Manville Corp.*, 57 B.R. 680 (Bkrtcy. S.D.N.Y.1986) ("*Frenville* with a strained, narrow analysis limits by judicial fiat a broad, legislatively-mandated definition of the term 'claim.'"); *Roach v. Edge (In re Edge)*, 60 B.R. 690 (Bkrtcy.M.D.Tenn.1986) (criticizing *Frenville* for "failing to differentiate access to the courts and 'claim' in bankruptcy."); *In re A.H. Robins Co., Inc.*, 63 B.R. 986 (Bkrtcy.E.D.Va.1986) ("This Court respectfully finds the holding in *Frenville* questionable, and ... [t]he invitation to embrace the *Frenville* error is respectfully declined.").

This Court believes that the cases rejecting the analysis suggested in *Frenville* are more faithful to the meaning and intent of the Bankruptcy Code and its underlying policy. Section 101(4) and the Bankruptcy Code defines "claim":

(A) right to payment, whether or not such right is reduced to judgment, liqui-

dated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The Bankruptcy Act of 1898 ("Act") contained concepts of "provability" and "allowability" which were technical threshold requirements which had to be satisfied before a debt would qualify for distribution and discharge in bankruptcy. The Act did not define "claim." Rather, § 63(a) provides that certain listed types of "[d]ebts of the bankrupt could be proved and allowed against his estate." Additionally, § 57(d) of the Act provided:

an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act.

This scheme under the Act often cast serious doubt as to the provability and allowability of contingent, unliquidated and unmatured claims. *In re Baldwin-United Corp.*, 55 B.R. 885 (Bkrtcy.S.D.Ohio 1985); *In re Johns-Manville Corp.*, 57 B.R. 680 (Bkrtcy.S.D.N.Y.1986).

The legislative history of the Bankruptcy Code makes it clear that it was the intent of Congress to put this uncertainty regarding contingent claims to rest:

H.R. 8200 abolishes the concept of provability in bankruptcy cases. All claims against the debtor, *whether or not contingent or unliquidated,* will be dealt with in the bankruptcy case.

\*      \*      \*      \*      \*      \*

The effect of the definition is a significant departure from present law.... By this *broadest possible definition,* and by the use of the term throughout title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case. *It permits the broadest possible relief* in the bankruptcy court.

House Report No. 95–595, 95th Cong. 1st Sess. 108, 309 (1977); Senate Report No. 95–989, 95th Cong.2d Sess. 21 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5807, 6266 (emphasis added).

In addition, the Bankruptcy Code now includes § 502(c)(1) which requires the Court to estimate for purpose of allowance "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."

The courts have applied the definition of "claim" in a manner consistent with this Congressional intent, as demonstrated by the following collection of judicial descriptions of the scope of "claim" concept, as set forth by the Court of Appeals for the Second Circuit:

"broad," *Ohio v. Kovacs,* [469] U.S. [274], 105 S.Ct. 705, 709, 83 L.Ed.2d 649 (1985); "very broad," *In re M. Frenville Co.,* 744 F.2d 332, 336 (3d Cir.1984), *cert. denied,* [469] U.S. [1160], 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); "extremely broad[ ]," *In re Kennise Diversified Corp.,* 34 B.R. 237, 244 n. 6 (Bankr.S.D. N.Y.1983); "could not be broader," *In re Thomas,* 12 B.R. 432, 433 (Bankr.S.D. Iowa 1981); "broadest possible," *Kallen v. Litas,* 47 B.R. 977, 982 (N.D.Ill.1985); *In re Vasu Fabrics, Inc.,* 39 B.R. 513, 517 (Bankr.S.D.N.Y.1984); *In re Johns-Manville Corp.,* 36 B.R. 743, 754 n. 6 (Bankr.S.D.N.Y.1984); "all-encompassing," *In re Baldwin-United Corp.,* 48 B.R. 901, 903 (Bankr.S.D.Ohio 1985); *In re Barnett,* 42 B.R. 254, 257 (Bankr.S.D. N.Y.1984); and "sufficiently broad to cover any possible obligation," *In re*

*Smith Jones, Inc.,* 26 B.R. 289, 293 (Bankr.D.Minn.1982).

*Robinson v. McGuigan (In re Robinson),* 776 F.2d 30 (2d Cir.1985), *cert. granted sub nom., Kelly v. Robinson,* —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986); *see also, In re Johns-Manville Corp.,* 57 B.R. 680, 687 (Bkrtcy.S.D.N.Y.1986); *Roach v. Edge (In re Edge),* 60 B.R. 690, 693–694 (Bkrtcy.M.D.Tenn.1986).

The linchpin argument in the *Frenville* analysis is the Court's conclusion that the concept of "right to payment" in § 101(4) is, "absent overriding federal law," tantamount to the concept of the accrual of the cause of action under state law. 744 F.2d at 337. Although the Third Circuit acknowledged the broad definition of "claim" under the Bankruptcy Code, it failed to recognize federal bankruptcy policy as "overriding federal law." This Court believes that this omission constitutes the substance of the *"Frenville* error." The expanded concept of "claim" under the Bankruptcy Code was designed to accord to the debtor "the broadest possible relief in the bankruptcy court." That relief includes the ability to discharge a broader spectrum of the debtor's outstanding obligations. A more realistic "fresh start" is likewise effectuated by the broader definition. Finally, the automatic stay—"one of the fundamental debtor protections provided by the bankruptcy laws"—extends to the full scope of the claim against the debtor. House Report No. 95–595, 95th Cong. 1st Sess. 340 (1977); Senate Report No. 95–989, 95th Cong.2d Sess. 54 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5840, 6296. "The federal policy underlying the stay is the protection of the debtor's estate from the 'chaos and the wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation.'" *In re Johns-Manville Corporation,* 57 B.R. 680, 685, citing *In re Frigitemp Corp.,* 8 B.R. 284, 289 (S.D.N.Y. 1981). The expanded scope gives the debtor a more comprehensive "fresh start" to "permit the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove

him into bankruptcy." House Report, *supra*, at 340. These concepts run to the heart of the Bankruptcy Code and are well-developed into a comprehensive federal policy. To read § 101(4) as the movants suggest would have the effect of judicially writing the terms "contingent" and "unmatured" out of the definition, and redrafted the clear legislative intent to expand the "claim" concept.

Furthermore, the Third Circuit's reliance on *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), for the proposition that "right to payment" is to be determined by reference to state law, is most likely misplaced even if the court had not misapplied the principle as we have suggested. As the court in the *Yanks* opinion noted:

> While the Supreme Court did state, at page 161, 67 S.Ct. at page 239,
>
> > What claims of creditors are valid and subsisting obligation against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.
>
> the Court also said, at page 162, 67 S.Ct. at page 239
>
> > In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits.
>
> and finally stated, at page 163, 67 S.Ct. at page 240, that bankruptcy courts are bound to follow the Bankruptcy Act as interpreted by the Supreme Court. The holding of that case is that federal case law *under the Bankruptcy Act* and developed in federal equity receiverships prohibited the allowance of a claim which was valid and enforceable under state law. That holding does not support *Frenville's* reliance upon state law to determine if a claim existed against the debtors at the time that the bankruptcy cases were commenced.

  \*  \*  \*  \*  \*  \*

*Frenville* is not consistent with the more recent decision of the Supreme Court in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). There, the Supreme Court followed Congressional intent by applying a broad definition of "claim" and held that a state's injunction against an individual debtor had become an obligation to pay money, a claim dischargeable in bankruptcy. The Court's inquiry focused on the definition of "claim" in the Bankruptcy Code and its legislative history. Not once did the Supreme Court find it necessary to consider state law to determine whether there was a "claim" or right of payment.

49 B.R. at 58 (emphasis added). *See also, Roach v. Edge (In re Edge)*, 60 B.R. 690, 695–696 (Bkrtcy.M.D.Tenn.1986); *In re Johns-Manville Corp.*, 57 B.R. 680, 689–690 (Bkrtcy.S.D.N.Y.1986).

Finally, the movants assert that all the cases which have criticized *Frenville* are all cases in which the respective claimants had known of their claims against the debtor prior to the filing of the bankruptcy. Such a characterization of the case law is inaccurate. *In re A.H. Robbins Co., Inc., supra,* involved a victim who was allegedly injured as a result of her wearing a Dalkon Shield intrauterine device. The claimant there argued that her claim did not arise until the time she knew or should have known the cause of her injury. In rejecting that argument, the Court noted:

> To follow *Frenville* and apply state law would be to confuse a "right to payment" for federal bankruptcy purposes with the accrual of a cause of action for state law purposes. As the *Edge* court noted, "[t]he statute of limitations cases do not concern the same issues or the same principles [as those which arise under the Code and a determination of when a claim arises]."

63 B.R. at 992 (citation omitted). *See also, In re Edge, supra,* (claimant discovered alleged negligent dental treatment post-petition). This Court is unable to find any requirement in § 101(4) or elsewhere in the Bankruptcy Code, limiting claims to those which are known to the claimant prepeti-

tion. Rather such claimants are provided an alternative remedy under § 523. Section 523(a)(3) provides that an individual debtor's discharge does not extend to debts which are not listed or scheduled in time to permit the timely filing of a proof of claim.

Based on the foregoing, the Court concludes that movants' claim against the debtor is a contingent or unmatured claim within the purview of § 101(4), which was not yet cognizable under state law at the date of the bankruptcy filing. The Court, therefore, holds that the automatic stay enjoins the movants from filing or prosecuting a cross-claim against the debtor. Although the present motion was encaptioned as a motion for relief from stay, there is not presently before the Court evidence sufficient to form the basis of an order lifting the stay "for cause" under § 362(d).

Counsel for the debtor shall prepare, file, and serve on counsel an order consistent with this opinion, which shall serve as findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.