839 F.2d 198
 18 Collier Bankr.Cas.2d 176, 17 Bankr.Ct.Dec. 265,
Bankr. L. Rep. P 72,188
 Rebecca GRADY, Plaintiff-Appellant,
v.
A.H. ROBINS COMPANY, INCORPORATED, Defendant-Appellee.
The Official Unsecured Creditors Committee of A.H. Robins
Company, Incorporated; Dalkon Shield Claimants'
Committee; Official Committee of Equity
Security Holders, Intervenor.
LEGAL REPRESENTATIVE FOR the FUTURE TORT CLAIMANTS,
Plaintiff-Appellant,
v.
A.H. ROBINS COMPANY, INCORPORATED, Defendant-Appellee.
The Official Unsecured Creditors Committee of A.H. Robins
Company, Incorporated; Dalkon Shield Claimants'
Committee; Official Committee of Equity
Security Holders, Intervenor.
 Nos. 86-1691, 86-1692.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 9, 1987.
Decided Feb. 4, 1988.
 
 Stanley K. Joynes, III (Rilee, Cantor, Arkema & Edmonds, Samuel M. Walker, Jr., Coates & Comess, Richmond, Va., Stephen H. Fredkin, Salinas, Cal., on brief), for plaintiffs-appellants.
 Harold S. Novikoff (Wachtell, Lipton, Rosen & Katz, on brief); Michael L. Cook (Skadden, Arps, Slate, Meagher & Flom, New York City, Mays & Valentine, Richmond, Va., Cadwalader, Wickersham & Taft, Berlack, Israels & Liberman, New York City, on brief), for defendants-appellees.
 Before RUSSELL, WIDENER and CHAPMAN, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Rebecca Grady and the Legal Representative of the Future Claimants appeal an order of the district court deciding that Mrs. Grady's claim against A.H. Robins Co., Inc. (Robins) arose prior to the date Robins sought protection under the Bankruptcy Code and therefore was subject to the automatic stay provision of 11 U.S.C. Sec. 362(a)(1). In re A.H. Robins Co., Inc., 63 B.R. 986 (Brktcy.E.D.Va.1986). We affirm.[1]
 
 
 2
 Robins, a pharmaceutical company, was the manufacturer and marketer of the Dalkon Shield, an interuterine contraceptive device, from 1971 to 1974. Production was discontinued in 1974 because of mounting concerns about the device's safety. See A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir.1986). Because of the overwhelming number of claims filed against it because of the Dalkon Shield, Robins filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec. 1101 et seq, on August 21, 1985.
 
 
 3
 Mrs. Grady had had inserted a Dalkon Shield some years before but thought that the device had fallen out.[2] On August 21, 1985, she was admitted to Salinas Valley Memorial Hospital, Salinas, California, complaining of abdominal pain, fever and chills. X-rays and sonograms revealed the presence of the Dalkon Shield. On August 28, 1985, the Dalkon Shield was surgically removed. Mrs. Grady was discharged from the hospital but not long after returned to her physician, complaining of persistent pain, fever and chills. She was again admitted to the hospital on November 14, 1985, on which admission she was diagnosed as having pelvic inflammatory disease, and underwent a hysterectomy. She blames the Dalkon Shield for those injuries.
 
 
 4
 On October 15, 1985 (almost two months after Robins filed its petition for reorganization), Mrs. Grady filed a civil action against Robins in the United States District Court for the Northern District of California. Grady v. A.H. Robins Co., Inc., Action No. 85-20635-SW. The case was subsequently transferred to the Eastern District of Virginia. Grady v. A.H. Robins Co., Inc., CA No. 86-0303-R.
 
 
 5
 Mrs. Grady then filed a motion in the bankruptcy court, seeking a decision that her claim did not arise before the filing of the petition so that it would not be stayed by the automatic stay provision of the Code. If the claim arose when the Dalkon Shield was inserted into her, the district court reasoned, then it would be considered a claim under the Bankruptcy Code and its prosecution would be stayed by the provisions of 11 U.S.C. Sec. 362(a)(1). If, however, the claim was found to arise when the injuries became apparent, then it might not be a claim for bankruptcy purposes and the automatic stay provision would be inapplicable.
 
 
 6
 The bankruptcy court determined that Mrs. Grady's claim against Robins arose when the acts giving rise to Robins' liability were performed, not when the harm caused by those acts was manifested. Robins, 63 B.R. at 993. The court rejected Mrs. Grady's contention that the court must look to state law to determine when her cause of action accrued and equate that with a right to payment. It concluded that the court must follow federal law in determining when the claim arose. Robins, 63 B.R. at 992-3. It held that the right to payment under 11 U.S.C. Sec. 101(4)(A) of Mrs. Grady's claim arose when the acts giving rise to the liability were performed and thus the claim was pre-petition under 11 U.S.C. Sec. 362(a)(1).
 
 
 7
 We emphasize the narrowness of the district court's holding. It held only that the automatic stay provision of 11 U.S.C. Sec. 362 applied, and we have recited its reasoning to arrive at that conclusion. It did not decide whether or not Mrs. Grady's claim would constitute an administrative expense under 11 U.S.C. Sec. 503(b)(1)(A), and it also did not decide whether or not the Future Tort Claimants would have a dischargeable claim within the reorganization case. 63 B.R. 994 n. 16, n. 17. We affirm, although our reasoning may vary somewhat from that of the district court.
 
 
 8
 Section 362 of the Bankruptcy Code, 11 U.S.C. Sec. 362, provides in part:
 
 
 9
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of--
 
 
 10
 (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 
 
 11
 * * *
 
 
 12
 The legislative history of the Code reveals the importance of Sec. 362 stay provision:
 
 
 13
 The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
 
 
 14
 House Report No. 95-595, 95th Cong. 1st Sess. 340-1 (1977); Senate Report No. 95-989, 95th Cong.2d Sess. 54-55 (1978); reprinted in 1978 U.S.Code Cong. & Adm.News 5787 at 5840 and 6296-97.
 
 
 15
 The district court correctly noted that the automatic stay is particularly critical to a debtor seeking to reorganize under Chapter 11 because he needs breathing room to restructure his affairs. Robins, 63 B.R. at 988, citing Matter of Baldwin-United Corp., 48 B.R. 901, 902 (Bkrtcy.S.D.Ohio 1985). While the importance of Sec. 362 cannot be over-emphasized, its coverage extends only to claims against the debtor that arose prior to the filing of its petition.
 
 
 16
 11 U.S.C. Sec. 101(4), as pertinent, defines a claim to be a
 
 
 17
 (A) right to a payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;
 
 
 18
 Congress intended that the definition of claim in the Code be as broad as possible, noting that "the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court." H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), reprinted in 1978 U.S.Code Cong. & Adm.News, 5787 at 5807-08 and 6266. The courts have consistently recognized the very broad definition to be given to claims. E.g. Ohio v. Kovacs, 469 U.S. 274, 279, 105 S.Ct. 705, 707, 83 L.Ed.2d 649 (1985); Robinson v. McGuigan, 776 F.2d 30, 34 (2d Cir.1985), rev'd Sub. Nom. on other grounds, Kelly v. Robinson, --- U.S. ----, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); Matter of M. Frenville Co., Inc., 744 F.2d 332, 336 (3d Cir.1984), cert. den. 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); In re Edge, 60 B.R. 690, 692-94 (Brktcy.M.D.Tenn.1986); In re Johns-Manville Corp., 57 B.R. 680, 686-88 (Bkrtcy.S.D.N.Y.1986).
 
 
 19
 While the parties agree that the term claim is broadly defined under the Bankruptcy Code, they disagree over whether Mrs. Grady's suit falls within that definition. Mrs. Grady primarily relies upon Matter of M. Frenville Co., supra, to support her contention that her claim falls outside the protection of the automatic stay.
 
 
 20
 Prior to filing its petition, Frenville, an independent auditing firm, had employed Avellina and Bienes (A & B), an accounting firm, to prepare its financial statement. After the bankruptcy petition was filed, several banks which had received the financial statement sued A & B, claiming that the statement was negligently prepared. A & B moved for relief from the automatic stay in order that it could bring Frenville into those lawsuits as a third-party defendant for their indemnification.
 
 
 21
 The court concluded that a pre-petition act by a debtor giving rise to later liability is not enough to bring an action within the definition of a claim. It held that the right to payment must exist pre-petition before a claim can exist. Frenville, 744 F.2d at 335-36. Because the Bankruptcy Code does not provide when a right to payment arises, the court turned to state law for its answer.[3] Because A & B had had no right under state law to seek indemnification from Frenville before the banks filed their suit, the claim was held to arise post-petition and therefore was not barred by the automatic stay provision of Sec. 362(a)(1).
 
 
 22
 Mrs. Grady argues that her cause of action against Robins did not accrue until after Robins had filed its reorganization petition and therefore the stay provision is inapplicable. Under California law, she argues that she could not have sued Robins until she knew the nature of her injuries.[4] The argument goes that because she had no right to payment from Robins under state law until she was injured, and since that injury occurred after the reorganization petition was filed, the stay provision of Sec. 362 should not bar her case from its prosecution. While not agreeing that state law necessarily controls, the Future Tort Claimants agree that Mrs. Grady had no pre-petition right of payment from Robins and therefore no claim under the Bankruptcy Code.
 
 
 23
 Robins argues that the district court was correct in declining to apply the reasoning of Frenville and in its conclusion that Mrs. Grady's claim falls within the definition set out in Sec. 101(4)(A) because the tortious conduct occurred prior to the filing of the petition. Robins relies primarily upon In re Black, 70 B.R. 645 (Bkrtcy.D.Utah, 1986); In re Edge, supra; In re Baldwin-United Corp., 57 B.R. 759 (S.D.Ohio 1985); and In re Johns-Manville Corp., supra. These cases decline to apply the reasoning in Frenville and conclude that claim accrual for bankruptcy purposes must be determined in light of bankruptcy law and not state law.
 
 
 24
 We have found no court outside the Third Circuit which has followed the reasoning and holding of Frenville. All of the cases coming to our attention which have considered the issue have declined to follow Frenville 's limiting definition of claim. In re Black, supra; Acevedo v. Van Dorn Plastic Machinery Co., 68 B.R. 495 (Bkrtcy.E.D.N.Y.1986); In re Edge, supra; In re Johns-Manville, supra; In re Baldwin-United Corp., supra; In re Yanks, 49 B.R. 56 (Bkrtcy.S.D.Fla.1985); In re Baldwin-United Corp., 48 B.R. 901 (Bkrtcy.S.D.Ohio 1985). See also In re Baldwin-United Corp. Litigation, 765 F.2d 343, 348 n. 4 (2d Cir.1985) (in which the court declines to routinely accept Frenville ); In re Riso, 58 B.R. 978 (Brktcy.D.N.H.1986). We likewise decline to follow Frenville, and our reasoning follows.
 
 
 25
 We commence with the proposition that "... except where federal law, fully apart from bankruptcy, has created obligations by the exercise of power granted to the federal government, a claim implies the existence of an obligation created by State law." Vanston Committee v. Green, 329 U.S. 156, 167, 170, 67 S.Ct. 237, 242, 243, 91 L.Ed. 162 (1946) (Justice Frankfurter concurring), and further, from that concurring opinion, that "[b]ankruptcy legislation is superimposed upon rights and obligations created by the laws of the States." 329 U.S. at 171, 67 S.Ct. at 244. The opinion of the court in Vanston further stands for the proposition that "In determining what claims are allowable and how a debtor's assets are to be distributed, a bankruptcy court does not apply the law of the State where it sits." 329 U.S. at 162, 67 S.Ct. at 240. So, the bankruptcy Code is superimposed upon the law of the State which has created the obligation. Congress has the undoubted power under the bankruptcy article, U.S. Const. Art. I, Sec. 8 cl. 4, to define and classify claims against the estate of a bankrupt. See Carpenter v. Wabash Ry. Co., 309 U.S. 23, 28, 60 S.Ct. 416, 418, 84 L.Ed. 558 (1940); Kuehner v. Irving Trust Co., 299 U.S. 445, 450, 57 S.Ct. 298, 300, 81 L.Ed. 340 (1937). In the case of a claim as noted above, the legislative history shows that Congress intended that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in bankruptcy. The Code contemplates the broadest possible relief in the bankruptcy court. Also, that history tells us that the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It provides a breathing spell to the debtor to restructure his affairs, which could hardly be done with hundreds or thousands of creditors persevering in different courts all over the country for a first share of a debtor's assets. Absent a stay of litigation against the debtor, dismemberment rather than reorganization would, in many or even most cases, be the inevitable result.
 
 
 26
 With those thoughts in mind, we turn to the pertinent parts of the statutes at hand. Section 362(a)(1) provides for an automatic stay of, among other things, judicial action against the debtor "... to recover a claim against the debtor that arose before the commencement of the case under this title." Section 101(4)(A) defines a claim to be a "right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."
 
 
 27
 The Frenville case, in construing these two sections, identified the crucial issue as "when did [the] right to payment arise." It found that a right to payment must exist prior to the filing of the petition, and by that the court obviously meant the right to the payment of money immediately, for it distinguished cases involving sureties which it reasoned involved a right to payment immediately upon the signing of a contract of suretyship, but contingent upon the occurrence of a future event. The court obviously was of the view, which is that espoused by Mrs. Grady and the Future Tort Claimants, that, so far as Sec. 362 is concerned, there is no such thing as a contingent tort claim.
 
 
 28
 While we do not dispute that the result obtained in Frenville is not irrational, with respect, we decline to follow it, and while the numerous cases which have declined to follow Frenville, many of which we have referred to above, have done so for a variety of reasons, we draw our conclusion largely from the words of the statute.
 
 
 29
 Shortly after the commencement of this case, the bankruptcy court created a class of claimants called "Future Tort Claimants." While we have been unable to find an order precisely describing the class created, the notices which have been sent out by the multiplied thousands by the bankruptcy court and which were approved by order of the bankruptcy court, to which exception has not been taken, describe this class as follows:
 
 
 30
 "Though not aware of any injury, I may have been injured by my use or another's use of the Dalkon Shield."
 
 
 31
 Code Sec. 101(4)(A) provides for a "right to payment" whether or not "such right" is "contingent."
 
 
 32
 BLACK'S LAW DICTIONARY, 5th Ed., 1979, defines "contingent" as follows, and we adopt this definition, there being no indication that Congress meant to use the word in any other sense:
 
 
 33
 Contingent. Possible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable. Synonymous with provisional. This term, when applied to a use, remainder, devise, bequest, or other legal right or interest, implies that no present interest exists, and that whether such interest or right ever will exist depends upon a future uncertain event.
 
 
 34
 Mrs. Grady's claim, as well as whatever rights the other Future Tort Claimants have, is undoubtedly "contingent." It depends upon a future uncertain event, that event being the manifestation of injury from use of the Dalkon Shield. We do not believe that there must be a right to the immediate payment of money in the case of a tort or allied breach of warranty or like claim, as present here, when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition, to constitute a claim under Sec. 362(a)(1). It is at once apparent that there can be no right to the immediate payment of money on account of a claim, the existence of which depends upon a future uncertain event. But it is also apparent that Congress has created a contingent right to payment as it has the power to create a contingent tort or like claim within the protection of Sec. 362(a)(1). We are of opinion that it has done so.
 
 
 35
 Not only do we think that a literal reading of the statute requires the result we have reached, our reading is fortified by other considerations. The broad reading of the word "claim" required by the legislative history and the cases, see, e.g., Ohio v. Kovacs, is considerable support. That the legislative history contemplates "the broadest possible relief in the bankruptcy court" also enters our reasoning. If Mrs. Grady and the Future Tort Claimants, who had no right to the immediate payment of money at the time of the filing of the petition, were participants in a Chapter 7 proceeding, the chances are that they would receive nothing, for no compensable result had manifested itself prior to the filing of the petition.
 
 
 36
 We also find persuasive the fact that the district court probably had authority to achieve the same result by staying Mrs. Grady's suit under 11 U.S.C. Sec. 105(a) in the use of its equitable powers to assure the orderly conduct of reorganization proceedings. See A.H. Robins Co. Inc. v. Piccinin, 788 F.2d 994, 1002-03 (4th Cir.1986); In re Baldwin United Corp. Litigation, 765 F.2d 343, 347-48 (2d Cir.1985); 2 Collier on Bankruptcy (1987) p 105.02.
 
 
 37
 We emphasize, as did the district court, that we do not decide whether or not Mrs. Grady's claim or those of the Future Tort Claimants are dischargeable in this case. Neither do we decide whether or not post-petition claims constitute an administrative expense. We hold only that the Dalkon Shield claim in the case before us, when the Dalkon Shield was inserted in the claimant prior to the time of filing of the petition, constitutes a "claim" "that arose before the commencement of the case" within the meaning of 11 U.S.C. Sec. 362(a)(1).
 
 The order appealed from is
 
 38
 AFFIRMED.
 
 
 
 [1]
 We use the terms district court and bankruptcy court interchangeably in our opinion. The district court did not refer this proceeding to a bankruptcy judge under 28 U.S.C. Sec. 157
 
 
 [2]
 The facts surrounding Mrs. Grady's claims have not been ascertained by trial. At this stage we proceed, as did the bankruptcy court, on her complaint and an affidavit filed by her
 
 
 [3]
 The court did comment that application of federal law might be appropriate in instances where the bankruptcy stems from a mass tort. Frenville, 744 F.2d at 337 n. 8
 
 
 [4]
 Mrs. Grady takes the position that, under California law, a cause of action does not accrue until the injured person knows or by the exercise of reasonable diligence should have discovered the cause of the injury when that injury results without perceptible trauma. Warrington v. Charles Pfizer & Co., 274 Cal.App.2d 564, 567, 80 Cal.Rptr. 130, 132 (1969)
 Since Mrs. Grady's injuries manifested themselves the same day as the filing of Robins' petition, we are far from certain that her claim should not be treated as pre-petition in all events. We will assume, however, for the purposes of this case that they manifested themselves under California law a few days later when her Dalkon Shield was discovered to be in place.