[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In this case, the defendant Village Manor Health Care, Inc. has moved for summary judgment as to count one of the complaint which is the only count directed against it. The defendant argues that "the filing of the plaintiffs complaint is void as a matter of law as said action was filed in violation of the automatic bankruptcy stay imposed by11 U.S.C. § 362(a)."
The standards to be applied in deciding a motion of this type are well known. If there is a material issue of fact, the court cannot decide it, since the non-moving party has a constitutional right to a trial. On the other hand, where such a motion is appropriate, it should be granted to avoid unnecessary expense and time necessitated by meritless litigation.
In this case, there does not appear to be any dispute over the underlying facts; a legal issue is presented concerning the interpretation of the ambit of the federal bankruptcy law in light of those facts.
The plaintiffs complaint is dated May 9, 2000 and has a return date of June 13, 2000 it was served upon the defendant Village Manor on May 17, 2000. The complaint basically alleges that on or about June 13, 1998, the plaintiff was shot by a former employee of the defendant and that the defendant knew or should have known of the probability of an assault on the plaintiff. The defendant knew or should have known of the assailant's dangerous propensities and did not provide adequate security or prevent him from entering the property although it knew or should have known the assailant was intoxicated and intended to harm the plaintiff.
The factual basis to the defendant's argument under the bankruptcy code is set forth on page 2 of its brief where it is stated that the assailant "retired from Village Manor on May 21, 1997. . . . Thus, Village Manor's alleged knowledge or notice, either actual or constructive, regarding (the assailant) must arise from his employment prior to May 21, 1997." Given the broad allegations of paragraph 6 of the complaint that proposition is not necessarily so but, interestingly, the plaintiff does not contest the motion on that basis.
The defendant's argument is that the defendant filed a voluntary petition in bankruptcy in the district court on December 16, 1997. That being the case, the provisions of 11 U.S.C. § 362a(1) automatically came into effect. Section 362(a) provides that a petition filed under the bankruptcy code operates as a stay "applicable to all entities, of CT Page 10812 —
 (1) the commencement or continuation, including the issuance or employment of process, or a judicial, administrative or other action or proceeding against the debt or that was or could have been commenced before the commencement of the case under this title or to recover a claim against the debtor that arose before the commencement of the case under this title."
As the plaintiff points out, if this section is applicable "actions taken in violation of the stay are void and without effect," In ReColonial Realty Co., 980 F.2d 125, 130 (CA. 2, 1992). Section 362a(1) must be read with reference to 11 U.S.C. § 101 (4) of the code. In Gradyv. A.H. Robins Co., Inc., 839 F.2d 198, 200 (CA. 4, 1988), the court said:
 "While the importance of § 362 cannot be overemphasized, its coverage extends only to claims against the debtor that arose prior to the filing of the petition. 11 U.S.C. § 101 (4), as pertinent, defines a claim to be a
 (A) right to a payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."
The Grady court went on to point out that "Congress intended that the definition of claim in the code be as broad as possible, noting that `the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court,'" id. p. 200; in fact as the court notes, "history tells us that the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It provides a breathing spell to the debtor to restructure [its] affairs. . . ." id. p. 202; see also cases cited by defendant giving broad reading to "claim," In re Johns-Manville Corp.,57 B.R. 680 (S.D.N.Y., 1986); In re Edge, 60 B.R. 690 (M.D.Term., 1986). The Manville Corp. case, as the defendant notes, indicates that pursuant to 11 U.S.C. § 101 (4): "Damages which are considered unmatured, unliquidated and contingent, clearly fall within the definition of a claim," id. 57 B.R. p. 687. The court on the same page went on to note that the theory of claims adopted by it "admits of the CT Page 10813 possibility that a victim of the debtor's pre-petition misconduct has a claim in bankruptcy notwithstanding that the victim knows not of any injury. . . ."
The previously discussed Grady case illustrates the application of these principles. That case arose out of the use of the Dalkon Shield. The plaintiff had the device inserted into her several years before 1985. In August of that year, she complained of abdominal pain and other symptoms and on August 25th the shield was removed. Soon after discharge, she developed other complaints and on November 14, 1985, the plaintiff was diagnosed with inflammation of the pelvis which required a hysterectomy. The defendant, Robins Company, filed a petition in bankruptcy sometime in August, 1985 and on October 15th, the plaintiff filed a civil action against the company. Ms. Grady then filed a petition in bankruptcy court seeking a decision that her claim did not arise before the filing of the petition and therefore the automatic stay provision of the code did not apply.
The bankruptcy court held that Grady's claim against A.H. Robins arose when the acts giving rise to the company's liability were performed (the insertion of the defective device) and not when the harm caused by that act was manifested. 839 F.2d at p. 199. The Court of Appeals affirmed citing the broad definition Congress meant to give to the word "claim." The court reasoned that the plaintiffs claim was "contingent" in that the claim:
 "depends upon a future uncertain event, that event being the manifestation of injury from use of the Dalkon Shield. We do not believe that there must be a right to the immediate payment of money in the case of a tort or allied breach of warranty or like claim, as present here, when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition, to constitute a claim under § 362 (a)(1). It is at once apparent that there can be no right to the immediate payment of money on account of a claim, the existence of which depends upon a future uncertain event. But it is also apparent that Congress has created a contingent right to payment as it has the power to create a contingent tort or like claim within the protection of § 362(a)(1). We are of opinion that it has done so." 839 F.2d at p. 203.
In Re Edge, supra, involves similar facts, uses similar reasoning and reaches the same CT Page 10814 result. There, certain dentists filed a petition in March, 1983 and listed the plaintiff as a creditor. The plaintiff had received treatment prior to bankruptcy. In late July, 1983, the plaintiff discovered she may have received negligent dental treatment from the dentists and one year later she brought a civil action against them. 60 B.R. p. 691. The plaintiff sought a declaration that her "claim" arose postpetition and thus was not subject to a § 362 stay. The bankruptcy court held otherwise. The court disagreed with the reasoning of the Third Circuit which could have led to a contrary result and, at 60 B.R. p. 705, said the following:
 "More basically, this court disputes the proposition offered by the Third Circuit that `there is no legal relationship . . . between a tortfeasor and a tort victim until a tort actually has occurred.'" Schweitzer, 758 F.2d at 943. The sentence itself is a tautology. There is contact and effect between tortfeasor and victim at the time of commission of the injurious act. The victim of negligence has an "interest" in the negligent party though judicial redress of the wrong must await the accrual of other facts. This interest is "contingent" and "unmatured" but it is a significant personal right of the victim which may mature into a traditional action in court.
 In conclusion, a right to payment and thus a claim arose at the time of the debtors' prepetition misconduct. Plaintiffs postpetition state court action against the debtors was prohibited by the automatic stay. 11 U.S.C. § 362 (1982) ed.)"
An Am.Jur. article, as is often the case, gives a succinct summary of the previous discussion and in fact cites the Grady case at 9B Am.Jur.2d "Bankruptcy." The following is said at page 233.
 "The view that a contingent claim may be subject to the automatic stay has been applied to contingent tort claims; thus, it is not necessary that there be a right to the immediate payment of money in order for a tort or allied breach of warranty or like claim to be subject to the stay, as long as the acts which constitute the tort or breach of warranty occurred prior to the filing of the bankruptcy petition. If a tort claimant is exposed to a defective product and sustains a bodily injury (or impact that gives rise to future injury) prior to the commencement of a CT Page 10815 bankruptcy case by the manufacturer, this view holds that the claimant's bankruptcy claim arises prepetition, regardless of nonbankruptcy law which provides that the cause of action on the claim does not arise until the claimant discovers the injury or the cause of the injury, and regardless of whether the injury remains latent and does not manifest itself until after the bankruptcy case is commenced." (Emphasis added.)
Similarly, in Collier on Bankruptcy, 15th ed. (rev.), Volume 3, § 362.03(3)(a), p. 362-16, it says:
 "The stay of litigation is limited to actions which could have been commenced before the commencement of the case or which are based upon claims that arose before commencement of the case. A claim arises at the time an obligation is incurred, not when it is due. Because section 101 includes contingent, unliquidated and unmatured fights to payment within the definition of claim, the stay prevents enforcement of such claims even if they become fixed after the commencement of the case. Claims which are contingent or unliquidated before the commencement of the case nevertheless `arise' before the commencement of the case."
In this case, on the accepted facts, there was no prepetition "claim," there was no tort. True, to accomplish the broad purposes of the federal Bankruptcy Act "claim" under § 101(4), as it defines the ambit of § 362(a)(1) must be given a broad meaning. But it cannot be given such a broad interpretation as to define any rational concept of the word "claim" out of existence. Here, accepting the allegations of negligence — as the court must for the purpose of this analysis — there may have been negligent acts or failures to act by the defendant but prior to the actual infliction of injury they could give rise to no claim, since the negligence did not act on or relate to the plaintiff in any way that could actually cause the injury suffered or bring about a physical contact with the plaintiff which later would manifest an injury. Operative negligence that defines a tort can only be those acts or failures to act which cause the injury at or immediately preceding its infliction apart from when the injury manifests itself. There was no claim here until the defendant's alleged negligence permitted the actual contact with the plaintiff which caused injury. Negligence floating in the air is not a "claim" under the bankruptcy code and thus subject to a § 362(a) stay. CT Page 10816
The reasoning of Grady and In Re Edge is in accord with these observations. They were both tort cases, there were allegations of negligence, and the actual negligent injury producing acts had been inflicted on the respective plaintiffs prior to the filing of the petition in bankruptcy. That, by any construction is not the case here.
Actions brought on claims arising after the filing of a petition ought not to be stayed for the practical reason that: "Such a stay would discourage others from dealing with the trustee or debtor in possession," Collier at Volume 3, § 362.03(3)(c), p. 362-17, In Re York,13 B.R. 757 (1981).
Viewing the action here as a post-petition claim not subject to the automatic stay provisions of § 362(a)(1) will not disrupt orderly proceedings in the bankruptcy court. Pursuant to the broad provision set forth in § 105(a) of the Bankruptcy Code the bankruptcy court probably has the power to stay these proceedings if that becomes necessary to accomplish its goals, cf. Grady at 839 F.2d, p. 203.
Also query whether regarding the action here as a prepetition claim would lead to harmful results that would not serve any rational federal interest in enforcing the bankruptcy laws. Would not an entity about to or having filed a petition lose some incentive to correct or change its negligent ways if negligent acts or failures to act which have not yet affected another party or brought about an injury producing event could be swept under the umbrella provided by the code's treatment of prepetition claims?
In any event, the court denies the motion for summary judgment filed by the defendant.
Corradino, J.