**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 08-1506**

_____

FOUGERE HOLCOMBE,

        Plaintiff - Appellant,

     v.

US AIRWAYS, INCORPORATED,

        Defendant – Appellee.

------------------------

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS,

        Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Claude M. Hilton, Senior
District Judge. (1:07-cv-00571-CMH-BRP)

_____

Argued: January 26, 2010        Decided: March 5, 2010

_____

Before TRAXLER, Chief Judge, and SHEDD and DAVIS, Circuit
Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished
per curiam opinion.

_____

**ARGUED:** Vladimir Matsiborchuk, New York, New York, for
Appellant. Douglas Michael Foley, MCGUIREWOODS, LLP, Norfolk,
Virginia, for Appellee. **ON BRIEF:** Sarah Beckett Boehm,

MCGUIREWOODS, LLP, Richmond, Virginia, for Appellee. David Neigus, Associate General Counsel, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Upper Marlboro, Maryland; Robert A. Bush, Ira L. Gottlieb, BUSH, GOTTLIEB, SINGER, LOPEZ, KOHANSKI, ADELSTEIN & DICKINSON, Glendale, California, for Amicus Supporting Appellant.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Fougere Holcombe ("Holcombe") brought suit against US Airways, Inc. ("US Airways") in the United States District Court for the Eastern District of New York, alleging Americans with Disabilities Act ("ADA") violations, including failure to accommodate. US Airways, in the meanwhile, filed for Chapter 11 bankruptcy reorganization in the United States Bankruptcy Court for the Eastern District of Virginia. The bankruptcy court confirmed US Airways' plan of reorganization. Thereafter, US Airways filed a second bankruptcy petition and only then did Holcombe file a claim based on her allegations of discrimination. The bankruptcy court granted summary judgment to US Airways, finding that Holcombe's claim was barred as the actions giving rise to her claim occurred prior to the adoption of US Airways' confirmation plan in the first bankruptcy. The district court affirmed the order of the bankruptcy court. Holcombe now appeals. We affirm in part and reverse in part.

I.

A.

Holcombe began working for US Airways in 1979 as a part-time passenger service agent at LaGuardia Airport. She was awarded full-time status in 1987. In 1992, she obtained a promotion to a fleet service agent position. She became a member

of the International Association of Airways Machinists and Airspace Workers ("IAMAW") in 1996.

In 1995, following a diagnosis of Crohn's Disease, an ailment that prevented her from working at night, standing for long periods of time or performing strenuous lifting, Holcombe requested accommodation. US Airways provided two options to Holcombe, and she chose the option of holding an open-time position in the tower. With the open-time option, Holcombe was able to use her seniority to obtain day shifts in a bidding system. By 2001, Holcombe had become a station manager.

In 2000 and 2001, Holcombe underwent several surgeries, taking two extended medical leaves. In the meanwhile, the LaGuardia unit changed its bidding system, allowing an open bid for all tower positions. As a result, employees could no longer use their seniority to obtain day shifts.

In January 2002, Holcombe met with Loretta Bove, the station manager at LaGuardia. Bove informed Holcombe that Holcombe could no longer exclusively work the open-time position with day shifts. During this meeting, Holcombe proposed several alternatives, but Bove rejected all of them because they would violate the seniority provisions to which US Airways was bound by its collective bargaining agreement ("the CBA") with the union. Thereafter, the human resources department at LaGuardia sent Holcombe a letter indicating that (1) her request for

4

daytime shifts was denied and (2) she could return to work on the evening shifts as allowed by the seniority provisions; or (3) she could take a leave of absence if she was unable to return to work. After working the day shift for two weeks, Holcombe was placed on night shifts. Holcombe worked the night shift from January to November 2002.

In February and March 2002, however, Holcombe had filed two grievances over, inter alia, the denial of her request for accommodation. US Airways offered Holcombe a ramp service position, which would require her to load and unload cargo on and off airplanes. Holcombe declined this offer. In October 2002, Holcombe filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting ADA violations for failing to provide reasonable accommodations.

Between November 2002 and January 2003, Holcombe held day shifts. Following the bid cycle in January 2003, when day shifts were no longer available to Holcombe, Holcombe did not return to work. By letter dated January 30, 2003, Bove placed Holcombe on a mandatory medical leave of absence. Bove explained that (1) US Airways could not accommodate Holcombe's request for day shifts without violating seniority provisions and (2) there were no vacancies within the fleet service classification that would comply with Holcombe's medical restrictions. Holcombe remained on medical leave of absence from US Airways until January 1,

5

2006, the date she was deemed to have resigned under the terms of the CBA[1].

On April 10, 2003, the EEOC had issued its determination that US Airways "engaged in employment discrimination in violation of the [ADA] with respect to harassment and accommodat[ion]." J.A. 29-30. In July 2003, Holcombe received her Notice of Right to Sue from the EEOC. In September 2003, Holcombe filed suit against US Airways in the United States District Court for the Eastern District of New York, alleging ADA and state law violations. The case was stayed in October 2004 after US Airways filed for reorganization in the United States Bankruptcy Court for the Eastern District of Virginia.

B.

As mentioned above, on August 11, 2002, US Airways and seven of its subsidiaries and affiliates each filed petitions for relief under Chapter 11 of the Bankruptcy Code. On September 6, 2002, the bankruptcy court entered an order establishing November 4, 2002 as the non-governmental claims bar date. The First Amended Joint Plan of Reorganization was confirmed on March 18, 2003 and it became effective on March 31, 2003. US Airways served bankruptcy notices on all claimants (including

---

[1] Under the CBA, an employee who remains on leave status in excess of three (3) years is deemed to have resigned her position and must be removed from the seniority roster.

Holcombe), and advertised the confirmation plan in the Wall Street Journal and the New York Times. On September 12, 2004, US Airways filed a second petition for relief under Chapter 11.

It is undisputed that Holcombe received multiple notices during the first bankruptcy case; however, she failed to file a proof of claim in the bankruptcy court. She did file a proof of claim in the second bankruptcy case in the amount of $60,475,000. US Airways objected to this claim and filed a motion for summary judgment. The bankruptcy court, having the benefit of full briefing and a hearing, granted the motion on the ground that Holcombe's claim was barred by the discharge in US Airways' first bankruptcy case. The district court affirmed the bankruptcy court's determination by order dated November 16, 2007. Holcombe now appeals.

II.

The district court's order affirming the decision of the bankruptcy court is subject to plenary review. In re Stanley, 66 F.3d 664, 667 (4th Cir. 1995). We review the bankruptcy court's factual findings for clear error and questions of law de novo. Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & K Lakeland, Inc.), 128 F.3d 203, 206 (4th Cir. 1997).

Under the Bankruptcy Code, confirmation of a Chapter 11 plan discharges a debtor "from any debt that arose before the

7

date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). Discharge occurs regardless of whether a proof of claim was filed, the claim was allowed, or the holder of the claim accepted the plan. Id. A claim is "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

Because US Airways' plan was confirmed on March 18, 2003, Holcombe's claim was properly discharged on that date unless the claim arose after confirmation. The question here, therefore, is whether Holcombe's cause of action was a "claim" within the definition in the Bankruptcy Code on March 18, 2003. We agree with the Bankruptcy Court and the District Court that Holcombe had a claim by March 18, 2003 and, therefore, her claim was properly discharged to the extent it was in existence on that date.

To determine whether a claim has arisen, we employ the "conduct test," which takes an expansive view of what constitutes a claim, because "Congress intended that the definition of claim in the Code be as broad as possible, noting that 'the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court.'" Grady v. A.H. Robins Co., 839

8

F.2d 198, 200 (4th Cir. 1988) (quoting H. R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), S. Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), reprinted in 1978 U.S. CODE Cong. & Adm. News, 5787 at 5807-8 and 6266). In Grady, we were faced with the question of whether women who had been implanted with the debtor's contraceptive device and suffered injuries due to the implant after the company's Chapter 11 filing had a claim that was subject to the automatic stay. Id. We held that, for a claim to arise, there need not be an immediate right to payment when the predicate acts occurred pre-petition. Id. at 200-203. Thus, we ruled that the plaintiff's claim arose pre-petition and was subject to the stay. Id. at 202-03.

Although Grady dealt with an automatic stay, our reasoning and holding may properly be applied to discharge injunctions. The bankruptcy court found that all events giving rise to Holcombe's reasonable accommodation claim – the company's precluding Holcombe from working day shifts in January 2002 and the company's refusal to allow anyone other than a supervisor to cover for Holcombe between November 2002 and January 2003 – occurred prior to the confirmation of the bankruptcy plan. Indeed, Holcombe (1) filed grievances with the US Airways Human Resources department, (2) filed a claim with the EEOC, and (3) was placed on mandatory medical leave before the confirmation date. It is clear that all the important acts giving rise to

9

Holcombe's original failure-to-accommodate claim arose when she filed her grievances with the Human Resources Department and/or filed a claim with the EEOC. That Holcombe did not receive a notice of right to sue from the EEOC until a month after the confirmation date is immaterial because the notice of right to sue, as the bankruptcy court correctly pointed out, is a procedural requirement and does not give rise to the claim. McSherry v. Trans World Airlines, Inc., 81 F.3d 739, 71 (8th Cir. 1996).

Holcombe points to two circumstances that demonstrate her claim arose after the Confirmation Date: (1) her failure to be selected for jobs for which she applied while on medical leave and (2) her automatic termination pursuant to the CBA after three years on medical leave. As to the first circumstance, we readily agree that any claim arising from allegedly discriminatory acts by US Airways occurring after March 18, 2003 were not discharged by the Plan of confirmation. Thus, for example, if US Airways failed to select Holcombe for jobs for which she applied after March 18, 2003, such a claim has not been discharged. To the extent that the district court's dismissal covers these alleged incidents of discrimination, the

dismissal is reversed.[2] See O'Loghlin v. County of Orange, 229 F.3d 871 (9th Cir. 2000). As for the second circumstance, the CBA provided that employees are deemed to have resigned after three years on medical leave. This resignation flowed naturally from Holcombe's leave status and was not a result of any affirmative conduct attributable to US Airways. In any event, to the extent that Holcombe was terminated as a consequence of US Airways' failure to offer her one of the jobs for which she applied after the confirmation of the reorganization plan, she would be entitled to a remedy for such injury. As a practical matter, Holcombe's viable claims, if any, arise from her non-selection for discrete jobs post-confirmation. Accordingly, any remedy awarded her if she should prevail on such claim (e.g., back pay, front pay, restoration of seniority, placement in a designated position, and/or compensatory damages) will take

---

[2] Of course, in order to proceed on these claims, Holcombe must follow the requisite administrative exhaustion procedures for ADA cases, a matter as to which we intimate no view. Nor do we express any view here as to whether there exists a genuine dispute of material fact as to any such claim. What is indisputable, however, is that the "continuing violation" doctrine does not apply in this instance. Accordingly, the district court was correct to reject Holcombe's apparent theory that all of US Airways' pre-confirmation acts and omissions remain cognizable. Rather, only the post-confirmation acts and omissions, if any, may give rise to liability. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002); see also Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456-1457 (Fed. Cir. 1997).

account of her termination, as the failure-to-hire theory is inextricably intertwined with her termination..

Finally, Holcombe presents other theories upon which her claims based on pre-confirmation acts might proceed. These theories are: (1) Holcombe could pursue her claim under the CBA and (2) US Airways' conduct was intentional and deceitful and therefore not subject to the discharge in bankruptcy. These issues were not raised in the bankruptcy court or on appeal to the district court. Holcombe is now precluded from raising these issues in the instant appeal.[3]

## III.

Holcombe has presented her claim as a single, unitary, "continuing violation" claim which accrued pre-confirmation and has persisted into the post-confirmation period. We reject that theory; accordingly, Holcombe's failure to file a proof of claim after receiving notice in the first US Airways bankruptcy case

---

[3] Even if these issues were properly before this court, Holcombe's claim would still be barred. First, the claims being pursued by Holcombe under the CBA are for breach of contract and not individual statutory claims. The union is currently handling the ongoing arbitration on Holcombe's behalf in a different forum. Second, the provision excluding from discharge debts caused by willful and malicious injury apply only to individual, and not corporate debtors. Beard v. A.H. Robins Co., 828 F.2d 1029, 1032 (4th Cir. 1987); Snug Enters. v. Sage (In re Snug Enters.), 169 B.R. 31, 32 (Bankr. E.D. Va. 1994).

12

means her claim as to any pre-confirmation actions did not survive the discharge. On the other hand, any claims arising from allegedly discriminatory acts and omissions occurring after the Confirmation Date have not been discharged; any such claim remains open for full adjudication on remand. We expressly leave to the court below plenary examination of any such claim or claims in the first instance. The order of the district court is, accordingly, affirmed in part, reversed in part, and remanded.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED