## CIRCUIT COURT OF LOUDOUN COUNTY

Sovran Bank, N.A.

     v.

Walter C. Jacob

     v.

Boothe, Prichard & Dudley

Case No. (Law) 8103

By JUDGE THOMAS R. MONROE

June 28, 1988

This matter comes before the Court on Mr. Jacob's Counterclaim and Third-Party Motion for Judgment to the original Motion for Judgment; Sovran Bank's Demurrer, Plea in Bar and Answer and Grounds of Defense to Counts I and II of the Counterclaim; and Boothe, Prichard and Dudley's Plea in Bar to Count II of the Counterclaim. All parties have presented oral and written arguments which have been carefully considered by the Court.

## I. *Factual Background*

In order to understand the pending action, it was necessary for this Court to review earlier suits filed involving the same/similar issues and parties.

Indeed, the key to resolving the present, pending action appears to be the identification of the parties and causes of action. To that end, a brief synopsis follows:

*Jacob v. First and Merchants National Bank*[1]
*At Law No. 7694*

Jacob and his wife secured a Promissory Note dated June 26, 1981, by a Deed of Trust on certain real property which they owned. Sovran made demand and Jacob failed and refused to make payment on the note. This resulted in Sovran, through its Trustee, foreclosing on the Deed of Trust. Sovran then acquired the property at a Trustee's sale on October 22, 1982.

The Commissioner of Accounts provided Mr. Jacob with the trustee's accounting of sale and Mr. Jacob objected to the accounting. Specifically, he objected to the property selling for more than set forth in the account ($41,000 subject to all prior encumbrances).

A hearing on this matter was held by the Commissioner on December 8, 1983. Based on evidence presented at the hearing and thereafter by memorandum, the Commissioner filed his report. The Commissioner held that "based on the totality of the evidence, your Commissioner finds that the sale was for $41,000.00 and the proceeds should be first applied to the two (2) existing prior deeds of trust liens."

Mr. Jacob filed nine exceptions to the Commissioner's Report, which were summarized in Judge Whiting's opinion letter of December 19, 1984,[2] as follows:

---

[1] Sovran Bank, N.A., is a successor in interest to First and Merchants National Bank.

[2] Printed above at page 1. [Reporter's Note]

112

(1) Exceptions 1 and 2 assert his principal contention that the sale cried was a sale of the equity of redemption with its value only being considered in the bids and not the gross value of the entire property.

(2) Exceptions 3 and 4 maintain that the commissioner ignored the testimony of three of the independent witnesses indicating there was no announcement at the auction sale of bidding to be based on the gross value of the property.

(3) Exceptions 5 and 6 contend that the commissioner erred in interpreting the express provisions of the paragraph 18 of the deed of trust and Virginia Code Section 55-59.4(3) by finding that the "proceeds should be applied to the two existing prior deeds of trust."

(4) Exception 7 charges the *trustee with breaches of fiduciary duty and improper actions, setting forth sixteen different grounds having to do with events which occurred after the sale except for the final three grounds*, which set forth an estoppel to amend the deed and the auctioneer's certificate which originally reflected a $41,000.00 consideration for the conveyance.

(5) Exceptions 8 and 9 are merely arguments that: (a) Mr. Jacob's position is confirmed by the auctioneer's certificate, the deed and its recordation, all indicating a consideration of $41,000.00; and (b) the failure to disclose the original certificate of the auctioneer until the end of the hearing before the commissioner showed an attempted cover-up and therefore, "Their evidence in its entirety should be set aside."

As to Exception 1 and 2, the Court ruled that the commissioner was fully justified in rejecting Jacob's claim that no such announcement was made "in light of the testimony of all the other witnesses at the sale." (Judge Whiting's first opinion letter, p. 4, hereinafter referred to as Opinion Letter).

The Court further ruled that Exceptions 3 and 4 did not, in fact, accurately describe the testimony of

impartial witnesses. Since those witnesses "didn't remember, didn't hear or had no knowledge" of the announcement, the Court held that the Commissioner was correct in his determination of the nature of the bidding process." (Opinion Letter, p. 5).

The Court denied Exceptions 5 and 6 finding "nothing unorthodox in selling property in this fashion at a foreclosure sale under a subordinate trust."

Exception 7 to the Commissioner's Report charged the *trustee* with *breaches of fiduciary duty and improper actions*, which constituted an estoppel to amend the deed (emphasis supplied). Judge Whiting held that he did not "believe that any of the alleged activities of the trustee constituting supposed violations of fiduciary duties could change an agreed sale price." (Opinion Letter, p. 8). He went on to stress that he believed "the Commissioner correctly failed to find any bad faith." (Opinion Letter, p. 8).

Finally, the Court ruled that Exceptions 8 and 9 were arguments as to various evidence presented, and "restatements of other exceptions" and thus were without merit.

*Sovran Bank, N.A. v. Jacob and Boothe, Prichard & Dudley*
*At Law No. 8103*

The present law action was filed by Sovran Bank, N.A., on April 5, 1985, against Walter C. Jacob. The Motion for Judgment represented that Jacob defaulted on a promissory note held by Sovran, that the note was secured by a Deed of Trust, and that because of the default, the Trustee foreclosed on the property resulting in its sale at auction.

The Motion for Judgment asked for the deficiency due under the note ($11,670.91 as of October 28, 1982).

Walter C. Jacob, the named defendant, answered by denying the entire Motion for Judgment. He demurred stating that the Motion for Judgment failed to state any action

114

at law or equity in that the payee was First and Merchants Bank not Sovran Bank.[3]

Jacob further answered that there was no deficiency, that First and Merchants had represented to him that they would bid the full amount owed on the notes, that this was a misrepresentation, and that he relied on these misrepresentations (para. 3).

In addition, Jacob filed a counterclaim and Third Party Motion for Judgment against Sovran Bank, N.A., and Boothe, Prichard and Dudley.

In Count I of the Counterclaim, Jacob stated that "Sovran willfully and maliciously advised Jacob that it would not agree to the sale . . . deleted the property from the original trustee's sale . . . and requested the property be sold at a subsequent trustee's sale whereupon Sovran acquired said property, all for the sole purpose of causing the Plaintiff to lose the contract of sale, to profit itself and then attempt to recover a contrived deficiency." Jacob goes on to claim that that conduct was [a] "malicious interference with Jacob's right to contract fully with his property" and asks for $15,000 compensatory damages and $100,000 punitive damages against Sovran.

In Count II, Jacob alleged that although he contacted Boothe, Prichard and Dudley requesting that he be paid the difference between the $41,000 sale price and the amount outstanding on the note (prior to the trustee's sale), Sovran and Boothe, Prichard and Dudley "failed and refused to pay said amount to Jacob" (para. 14); that Boothe, Prichard and Dudley, "*by its partner Courtland Traver*, acting as trustee, inadvertently failed to announce the manner in which the bidding would occur other than having the auctioneer announce the property would be sold subject to two (2) prior trusts; that Sovran inadvertently bid the sum of $41,000 in the belief that the two (2) prior trusts would be paid from the amount of the bid when no such announcement had been made." (para. 15) (emphasis supplied).

---

[3] Moot as a result of Sovran's amending the original Motion for Judgment to add that Sovran is the successor in interest to First and Merchants National Bank.

Jacob continues by claiming that "Sovran, by their respective employees and Boothe, Prichard and Dudley, *by their respective partner and associate*" have engaged in a conspiracy to commit perjury to cover up their own negligence and ineptness and have defrauded the Court "by knowingly rerecording the Trustee's Deed to reflect a lower (false) sales price; knowingly obtaining and falsified auctioneer's certificates and submitting it to the Commissioner of Accounts; testifying to certain figures being announced on a certain date when said figures were unknown to them at that time; falsely testifying as to the type of bidding process announced; and intimidating a Sovran employee to falsely testify."

Jacob claims that as a result of this conspiracy, he has been damaged in the amount of $24,000, i.e. the amount of Sovran's bid minus the amount due on the note prior to the sale (para. 17). In addition, he asks for $100,000 in punitive damages against Sovran and Boothe, Prichard and Dudley.

In response, Sovran Bank filed an Answer, Demurrer and a Plea in Bar. In the Plea in Bar, Sovran asserts that Count I and II are barred by the Statute of Limitations and Count II is barred by the doctrines of *res judicata* and collateral estoppel.

Boothe, Prichard and Dudley, Third Party Defendant, has filed a Plea in Bar which also raises the doctrines of *res judicata* and collateral estoppel as bars to Count II. The question of whether these doctrines can be applied to this cause of action is the main focus of this opinion.

## II. *Res Judicata: Does It Apply?*

*Res judicata* and collateral estoppel are similar doctrines with an identical goal; to put an end to litigation. There are important differences, however. *Res judicata* precludes re-litigation of "the *same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies" whereas collateral estoppel precludes litigation "in a subsequent action based upon a collateral and *different cause of action* . . . . The parties to the first action and their privies are precluded from litigating any *issue* of fact actually litigated and essential to a valid and final personal

judgment in the first judgment." *Bates v. Devers*, 214 Va. 667 (1974).

It is clear here that the earlier lawsuit (or Bill of Complaint) covered the same foreclosures on the same pieces of property. For *res judicata* to apply, however, four things must occur:

(1) identity in the thing sued for;
(2) identity of the cause of action;
(3) identity of persons, and of parties to the action;
(4) identity of the quality in the persons for or against whom the claim is made.

*Mowry v. City of Virginia Beach*, 198 Va. 205 (1956), 8B M.J. *Former adjudication or Res Judicata*, Section 2, page 153.

After careful consideration, this Court is of the opinion that Res Judicata bars further litigation of Count II and that the four criteria are met.

In *Jacob v. First & Merchants Bank*, Jacob filed suit with his exceptions to Commissioner Phillips's Report. The decision by Judge Whiting to affirm the Commissioner was a final judgment. More importantly, the earlier law suit/bills of complaint concerned the exact same property that is at issue here.

At first blush, the two causes of action may appear to differ. But "a 'cause of action,' for purposes of *res judicata*, may be broadly characterized as an assertion of particular legal rights which have arisen out of a definable factual transaction . . . (and) may present several factual and legal issues." *Bates v. Devers, supra*, p. 672, fn. 8. Here, the factual transaction was the trustee sale of the property.

Further, the same arguments are being made to this Court that were ruled upon, and dismissed, by Commissioner Phillips and Judge Whiting.

Here Jacob seeks to hold the law firm of Boothe, Prichard and Dudley liable for the conduct of one of its partners, Courtland Traver. Jacob, in his Counterclaim, alleges that Traver:

> [A]cting as trustee, inadvertently failed to announce the manner in which the bidding would be conducted other than causing the auctioneer to announce that the property would be sold

subject to two (2) prior trusts . . . (para. 15).

He goes on to charge Sovran Bank and Boothe, Prichard and Dudley with:

> conspiracy to commit perjury to cover up their own negligence and ineptness and have defrauded the Court as follows: (a) They have rerecorded the Trustee's deed to reflect a substantially reduced consideration knowing it to be false, (b) They have obtained a falsified auctioneer's certificate and submitted it to the Commissioner of Accounts knowing same to be false, (c) They have testified as to precise payoff figures being announced on a prior second deed of trust when they were not known to them at that time, (d) They have testified that at the sale. . . the trustee announced that the bidding would be conducted so as to include the prior deeds of trust knowing same to be false, (e) They have intimidated an employee of Sovran to so testify falsely by threat of loss of employment.

There has been no finding of liability on the part of the trustee/partner. Judge Whiting overruled the exceptions filed by Jacob as to whether the trustee "properly" announced the manner in which the sale was to be conducted. As to "rerecordation" of the Trustee's deed and falsification of the auctioneer's certificate, Judge Whiting as previously noted, agreed with the Commissioner who:

> was convinced, after seeing and hearing the witnesses, that an *honest and obvious mistake had been made in the auctioneer's certificate* and the original deed and record should be corrected. Although the trustee and his agents might have been more diligent in responding promptly and accurately as to what did happen, *I believe the Commissioner correctly failed to find any bad faith* . . . (Opinion Letter, p. 8).

The perjury and conspiracy to commit perjury allegations must fail as well. Jacob's claims of false testimony were addressed in his petition for a rehearing of Judge Whiting's December 19, 1984, Opinion Letter. The Court's response was to *refuse* to grant a rehearing finding "Mr. Dodson was only one of several witnesses contradicting Mr. Jacob's version so that the new evidence, if offered, would not have changed the Commissioner's (or its) ruling." (Judge Whiting's second letter opinion, p. 3, hereinafter referred to as Opinion Letter 2.) The Court went on to state that "(T)he alleged source of information for the affidavit (Mr. Dodson) denies the statements attributed to him by Mr. Jacob and there is *no* corroboration of a most serious charge of perjury in this case."

Judge Whiting continued with clear language:

> In all candor, I must say that Mr. Jacob could only prevail in his present assertions if this Court found that one witness, Dodson, deliberately lied under oath, two other witnesses, Crovo and the trustee, Traver, required the false testimony of the bank employee Dodson and three members of the Virginia Bar (Traver, Prichard and Rousch) allowed him to testify falsely in violation of DR 7-102 . . . if fraud must be proved by clear and convincing evidence, these charges ought at least to meet that standard. In charity, I will only say they do not. (Opinion Letter 2, p. 3).

While the action before Judge Whiting was the accounting filed by the trustee, Mr. Traver, the same allegations present there are raised anew in Jacob's Third-Party Motion for Judgment against Boothe, Prichard and Dudley. The same testimony and evidence was presented, testimony and evidence which was essential to the final judgment in the earlier litigation.

Finally, while the parties named are different, a close examination of the facts demonstrates privity between the bank, the trustee, and the law firm:

> Privity of interest under the doctrine of *res judicata* is based upon a common material interest

in the litigated subject matter . . . In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right. . . a valid judgment on the merits and not based on a personal defense, in favor of a person charged with the commission of a tort or a breach of contract, bars a subsequent action by the plaintiff against another responsible for the conduct of such person if the action is based solely upon the existence of a tort or breach of contract by such person . . .

8B M.J. *Former Adjudication or Res Judicata*, Section 14, page 173.

It is clear that the trustee was in privity to the bank in the earlier litigation. The trustee wanted to prove his accounting was correct. Certainly Sovran had an interest in demonstrating that the trustee had conducted the foreclosure sale properly. In the earlier litigation, Mr. Prichard stated on the record that the trustee was considered to be a party to the action (*See* Transcript from Commissioner's hearing December 8, 1983). It is worth noting that Jacob did not object to the characterization of Traver as a "party."

The trustee and the law firm were both in privity with Sovran because Sovran defended the acts of its trustee. It is established that:

one who . . . defends a suit in the name of another, to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment, as fully entitled to avail himself of it, as an estoppel against an adversary part, as he would be if he had been a party to the records. *Souffront v. La Compagnie des Sucreries*, 217 U.S. 475, 30 S. Ct. 608, followed in *Wright v. Wright*, 164 Va. 245, and quoted with approval in *Patterson v. Saunders*, 194 Va. 607 (1953).

Jacob, in the present litigation, seeks to hold Boothe, Prichard and Dudley liable for the acts of its partner, the trustee. Boothe, Prichard and Dudley represented both the trustee *and* the bank in the previous litigation. And while only his law firm is named in the Counterclaim, it was Courtland Traver who was served with the suit. Since the interests of the firm, the bank and the trustee are identical in both litigations, the elements of *res judicata* have been met. The third party action for conspiracy to commit perjury and perjury thus fails against both Boothe, Prichard and Dudley and Sovran Bank.

III. *Statute of Limitations/Interference with Contract Rights*

Jacob's Counterclaim alleges that Sovran:

willfully and maliciously advised Jacob that it would not agree to the sale, later deleted said property from the original trustee's sale, and still later requested that the property be sold at a subsequent trustee's sale whereupon Sovran acquired said property, all for the sole purpose of causing the Plaintiff to lose the contract of sale, to profit itself, and then attempt to recover a contrived deficiency. (Count I, para. 8).

Jacob goes on to allege that this conduct constituted "willful and malicious interference with Jacob's right to contract freely with his property."

Counsel for Counter-Defendant Sovran argues that there is no cause of action in Virginia for malicious interference with the right to contract freely with property. It also defends on the grounds that the claim is barred by the Statute of Limitations.

The conduct which Jacob complains of occurred as follows:

(1) pre-April 1982: Sovran refused to permit the sale of the property and represented that said property would be included in the trustee's sale of April 1982.

(2) October 22, 1982: Sovran proceeded to foreclose on the property.

(3) December 8, 1983: hearing before Commissioner Phillips.

"Malicious interference with the right to contract" has been recognized in Virginia. Tortious interference with a contract right occurs where there is "an intentional, improper interference with another's contractual relations" *Allen Realty Corp. v. Holbert*, 227 Va. 441 (1984). This interference must: (1) induce or otherwise cause a third party not to enter into a prospective contract with the plaintiff, or (2) prevent the plaintiff from entering into a contract. Annot., 6 A.L.R. 4th 195 (1981), quoted with approval in *Allen Realty Corp.* at 449.

Jacob's statements to the contrary, this cause of action is separate and distinct from any duties imposed on Sovran through the note/U.C.C. (Compare Section 8.01-243 Code of Virginia with Section 8.2-725 U.C.C.). The cause of action must be characterized as a personal action for injury to a property right. The counterclaim, having been filed on April 29, 1985, comes within the prescribed five year Statute of Limitations.

Based on the foregoing analysis, Sovran Bank's demurrer and Plea in Bar as to Count I of the Counterclaim is overruled. Count II is hereby dismissed as its effect is to duplicate the previous chancery suit, *Jacob v. First and Merchants National Bank*. The plea of *res judicata* of both Sovran and Boothe, Prichard and Dudley is hereby sustained.

December 22, 1988

This matter comes before the court on Sovran Bank's (hereinafter referred to as Sovran) Motion for Reconsideration of this Court's decision overruling Sovran's Demurrer and Plea in Bar as to Count I of the Counterclaim, and upon Counterclaimant's (Jacob's) Motion for Sanctions pursuant to Section 8.01-271.1 of the Code of Virginia, 1950, as amended. The Court has carefully considered the motions.

*Count I, Statute of Limitations/Interference with contract rights.*

Count I of Jacob's counterclaim alleges that Sovran:

. . . willfully and maliciously advised Jacob that it would not agree to the sale, later deleted said property from the original trustee's sale whereupon Sovran acquired said property, all for the sole purpose of causing the plaintiff to lose the contract of sale, to profit itself, and then attempt to recover a contrived deficiency. (Count I, Para. 8).

Mr. Jacob alleges that such conduct constitutes "willful and malicious interference with Jacob's right to contract freely with his property." As stated in the opinion letter of this court on June 28, 1988, "[m]alicious interference with the right to contract has been recognized in Virginia" (opinion letter, page 10). The Court further characterized this cause of action "as a personal action for injury to a property right." (opinion letter, page 10). In reviewing the counterclaim, the court notes that Mr. Jacob does not allege an injury to property per se, nor does he argue that this in an action in contract or fraud.

In an analysis of paragraph 8 of the counterclaim, this court finds that the use of the words "contrived deficiency," leaves no doubt that Mr. Jacob asserts the acts of fraud and misrepresentation against Sovran. The fraud and misrepresentation had no impact on the real property itself and in fact are personal actions falling within the ambit of Section 8.01-248 of the Code of Virginia, 1950. *Pigott v. Moran*, 231 Va. 76 (1986), is a controlling opinion as to the facts in this case.

This case is distinguished from the facts in *Lavery v. Automation Management Consultants*, 234 Va. 145 (1987), where the Count on page 154 stated:

We therefore hold that, insofar as plaintiff's claim is based on the appropriations of their likeness and name for defendant's commercial benefit, it is an action for invasion of their "property" rights and not one for injury to the person.

There the Count speaking:

> We hold that Code Section 8.01-40(A) creates in an individual a species of property right in their name and likeness.

There the five-year Statute of Limitations applied, for property damages, because of the statute, 8.01-40(A).

Here this cause of action is time barred by the one year statute of limitations.

*Sanctions, Section 8.01-271.1 of the Code of Virginia, 1950, as amended.*

Both parties have moved for sanctions against one another alleging that the pleadings tendered have not been filed in good faith and have been for improper purposes. The court finds that the procedures used, the issues raised, and the authorities cited are relevant and appropriate that the motions, including the motion for reconsideration, are well grounded in fact and are warranted by existing law or a good faith argument for modification or reversal of existing law and finding of fact and conclusions of law.

The Court fails to find that pleadings were filed for improper purposes, or harassing in nature, designed to cause unnecessary delay or needless increase in the cost of litigation.

The motions for sanctions are denied.

Based on the foregoing analysis, Sovran Bank's motion for reconsideration of the Court's decision overruling Sovran's Demurrer and Plea in Bar as to Count I of the Counterclaim is granted and Count I of the Counterclaim is dismissed.

This case will proceed to trial on the Amended Motion for Judgment.