**In re Franklin MONSOUR, Debtor.**

**Franklin Monsour, Plaintiff,**

v.

**Martha Monsour, Defendant.**

**Bankruptcy No. 96–03575.
Adversary No. 04–00071.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

July 19, 2007.

---

Jesse S. Shelor, Michael Dean Hart, Michael D. Hart P.C., Roanoke, VA, for Plaintiff.

Evelyn K. Krippendorf, The Krippendorf Firm, Roanoke, VA, for Defendant.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the court is the Plaintiff's Complaint to Determine Dischargeability. The Complaint seeks a declaration that the Plaintiff received a discharge of certain debt owed to the Defendant as well as damages for violation of the discharge injunction. After due consideration of the evidence and authorities and for the reasons stated herein, the relief sought by the Plaintiff is denied.

## BACKGROUND

The Plaintiff and Defendant married on July 10, 1970. The Defendant filed for divorce on December 7, 1994, in Franklin County Circuit Court (herein Circuit Court). On November 20, 1995, the Circuit Court entered a Decree of Reference, which referred all matters pertaining to spousal support and equitable distribution[1] to a Commissioner in Chancery (herein Commissioner) for recommendation.[2] On April 3, 1996, the Circuit Court entered a Final Decree of Divorce (herein Decree of Divorce). Because the Commissioner had yet to make his recommendations, the Decree of Divorce preserved for its final resolution all matters pertaining to spousal support and equitable distribution for later determination.

On October 23, 1996, the Plaintiff filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. The Plaintiff listed the Defendant as a co-debtor on various joint debts. The Plaintiff did not list the Defendant as a creditor. The bankruptcy estate contained no distributable assets. The Plaintiff received a discharge on January 22, 1997. The bankruptcy case closed that same day.

After conducting hearings on March 7, 1996, and September 5, 1996, the Commissioner filed his report on July 11, 1997. The report recommended a permanent spousal support award to the Defendant in the amount of $1,000.00 per month. The report also recommended the transfer of all marital assets and joint debt to the

---

1. In Virginia, issues concerning spousal support and equitable distribution are codified in Virginia Code Sections 20–107.1 and 20–107.3, respectively. *See* VA Code Ann. §§ 20–107.1 and 20–107.3 (1994). "A distinct difference ... exists between a spousal support award and a monetary award made pursuant to [Virginia] Code § 20–107.3." *Brown v. Brown,* 5 Va.App. 238, 246, 361 S.E.2d 364, 368 (1987).

2. In Virginia, circuit courts appoint commissioners in chancery to aide equity judges in matters such as taking evidence or settling accounts. 1–8 *Bryson on Virginia Civil Procedure* § 8–8.04[1] (4th ed.2006). A commissioner in chancery is a quasi-judicial officer whose duties are set out in a decree of reference. *Id.* at § 8–8.04[2]. Circuit courts regularly utilize commissioners in divorce proceedings. *Id.*

Plaintiff because of the existence of few marital assets and the "undisputed fact that the [Plaintiff] disposed of many marital assets." (Comm.Rep.4) The Commissioner also recommended the Plaintiff pay a lump sum of $249,071.00 to the Defendant "as alimony in order to pay the joint debt for which [the Defendant] remains responsible," if Plaintiff's bankruptcy prevented "the smooth transfer of these debts." (Comm.Rep.4–5).

On July 23, 1997, the Plaintiff filed certain exceptions to the Commissioner's report.[3] On November 19, 1997, the Plaintiff filed a Plea in Bar.[4] In both, the Plaintiff asserted that he received a discharge of the lump sum obligation, arguing that the lump sum obligation constituted a property settlement and not spousal support. On March 11, 1998, the Circuit Court entered a decree adjudicating the issues which it had previously referred to the Commissioner.[5] The March 11, 1998 Decree (herein Decree) took into consideration the exceptions to the Commissioner's report and the other argument presented by counsel. The Decree overruled the exceptions, ordered the Plaintiff to pay to the Defendant the sum of $1,000.00 in periodic spousal support, pay $249,071.00 in "a lump sum of spousal support . . . [which] is in addition to the periodic payment," and

affirmed all other recommendations set forth in the report.[6]

On more than one occasion the Defendant has sought to enforce the Decree, causing the Plaintiff to appear Circuit Court on several occasions to show cause why he should not be held in contempt of court for failing to comply with the Decree. The Plaintiff has been found in contempt several times.

On October 6, 1998, the Defendant a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code and later received her discharge. Defendant contends Plaintiff's failure to regularly make period support payments and her resulting inability to pay the joint debts caused her to file for bankruptcy.

On July 15, 2004, the Plaintiff filed a motion to reopen his bankruptcy case and filed a Complaint to Determine Dischargeability that same day. The Complaint seeks to determine the dischargeability of the lump sum obligation. After a lengthy pre-trial and discovery period, the court set a trial date of December 12, 2006. Prior to trial, the parties agreed to submit the determination of the complaint on brief.

## DISCUSSION

This court has jurisdiction over the parties and the subject matter of this proceed-

---

3. After taking evidence at a hearing or hearings, a commissioner must file a report setting forth his or her findings of fact and conclusions of law with the clerk of the court. 1–8 *Bryson on Virginia Civil Procedure* § 8–8.04[4]. After the report is filed, any party may file written exceptions (objections). *Id.* After hearing arguments on any exceptions, the judge may accept, modify or reject the report. *Id.*

  The report is advisory and non-binding. *Id.* A judge, however, will confirm the report unless it is "plainly erroneous, unsupported by the facts, or unreasonable and unwarranted." *Id.* The final decree is based, in whole or part, upon the report. *Id.*

4. "A plea in bar is a defensive pleading that reduces the litigation to a single issue which, if proven, creates a bar to the plaintiff's right to recovery." 1–9 *Virginia Civil Procedure* § 9.8 (2006).

5. The Circuit Court preserved the final determination of these issues for itself in the Decree of Divorce.

6. The remainder of the report classified the property of the couple as marital or nonmarital.

ing under 28 U.S.C. §§ 151, 157, and 1334. This is a case filed under title 11, and this court may hear and determine such proceeding under 28 U.S.C. § 157(b)(I). Venue is proper in this District under 28 U.S.C. § 1409(a).

Plaintiff argues that he received a discharge of the lump sum obligation, because it constitutes a property settlement award and not spousal support, which is excepted from discharge. As such, the Plaintiff argues that Defendant violated the discharge injunction by attempting to enforce the Decree and collect on the lump sum obligation.

Conversely, the Defendant argues that the principles of *res judicata* bar this current action. Alternatively, the Defendant argues that Plaintiff did not receive a discharge of the lump sum obligation because (i) the claim arose post-petition and (ii) the debt is of the kind excepted from discharge under 523(a)(5).

Any violation of the discharge injunction turns on the issue of dischargeability. Therefore, the issue of dischargeability, including its potential preclusion, will be addressed first.[7]

## I. Claim Preclusion Bars Plaintiff's Relitigation of Dischargeability

▮ Under the doctrine of *res judicata*, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir.2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103, (1981) and *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60

L.Ed.2d 767 (1979)) (other citations omitted). In order for claim preclusion to apply, three elements must be shown: (1) a final judgment on the merits in prior litigation; (2) an identity of the cause of action in both the earlier and the later litigation; and (3) an identity of parties or their privies in both sets of litigation. *Pueschel*, 369 F.3d at 355; *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir.1991); *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.1981).

▮ Here, the Circuit Court's Decree, which overruled the Plaintiff's exceptions to the Commissioner's report and ordered the payment of permanent and lump sum awards, constitutes a final judgment on the merits. *Sovran Bank N.A. v. Jacob*, 15 Va. Cir. 110, 116 (1988) (ruling that the affirmation of a commissioner's report is a final judgment). The identity of the parties also exists, because the parties in both sets of litigation are identical. Therefore, the only issue remaining is whether an identity of cause of action exists.

▮ The Fourth Circuit employs a transactional approach in determining the identity of cause of action, which inquires whether the claims " 'arise out of the same transaction or series of transactions or the same core of operative facts.' " *Pueschel*, 369 F.3d at 355 (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996)). Claims need not be identical in order to arise out of the same transaction. *Pueschel*, 369 F.3d at 355 ("Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] sin-

7. The Debtor filed his petition on October 23, 1996. Therefore, this case is controlled by the law in effect prior to the adoption of the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 (BAPCPA). The Debtor reopened the case on August 10, 2004. The reopening of the case does not change the applicable law.

gle cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" (quoting *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir.1991))).

An identity of the cause of action exists. The Plaintiff argued before the state court, and now argues before this court, that he received a discharge of the lump sum obligation. Because the Plaintiff makes the same legal argument based upon the same facts in both sets of litigation, an identity of the cause of action exists.

In his pleadings, the Plaintiff submits that no action seeking to determine the dischargeability of debt had been instituted in the state court proceedings and, therefore, the discharge order enjoined the Defendant from recovering or seeking to recover the lump sum obligation. However, whether any party initiated any proceedings to determine the dischargeability of debt is not determinative of whether an identity of cause of action exists, because *res judicata* bars claims that were or could have been litigated in the prior proceeding. *Pueschel*, 369 F.3d at 355 (citing *Federated Dep't Stores, Inc.*, 452 U.S. at 398, 101 S.Ct. 2424 ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.")); *Meekins*, 946 F.2d at 1057 (stating that *res judicata* "'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding'" (quoting *Peugeot Motors of Am. v. E. Auto Distribs., Inc.*, 892 F.2d 355, 359 (4th Cir.1989))).

■ Bankruptcy courts and state courts share concurrent jurisdiction over several of the exceptions to discharge enumerated in Section 523(a). *In re Carter*, 156 B.R. 768, 772 (Bankr.E.D.Va.1993); *Douglas v. Douglas*, 17 Va.App. 380, 437 S.E.2d 244 (Va.App.1993). Section 523(c) of the Bankruptcy Code states that bankruptcy courts have exclusive jurisdiction to decide exceptions to discharge that arise under Sections 523(a)(2), (4), (6), and (15). 11 U.S.C. § 523(c) (1996). Bankruptcy courts and state courts maintain concurrent jurisdiction to decide all other exceptions to discharge arising under Section 523(a), including Section 523(a)(5), which excepts from discharge any debt to a spouse for alimony, support or maintenance made in connection with a divorce decree. *In re Crawford*, 183 B.R. 103, 107 (Bankr. W.D.Va.1995) (citing *Rosenbaum v. Cummings (In re Rosenbaum)*, 150 B.R. 994, 996 (E.D.Tenn.1993)); 11 U.S.C. § 523(a)(5) (1998); *see also* Bankruptcy Rule 4007(a) (1996) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."). The Plaintiff had an opportunity to fully litigate dischargeability and any exceptions arising under Section 523(a)(5) in state court proceedings because he filed bankruptcy and received his discharge before the Circuit Court entered its Decree. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 314 (5th Cir. 2004) (finding that *res judicata* barred claims in plaintiffs' subsequent litigation because they were based on conduct that predated the filing of their lawsuit, and thus, could have been included in the earlier lawsuit).

The three elements of *res judicata* are present. Therefore, relitigation of the discharge issue in this court is barred. As such, the court need not determine the dischargeability of the lump sum obligation on the merits. However, because the doctrine of *res judicata* seeks to "protect the defendant from the burden of relitigation the same claim in

different suits," *Pueschel,* 369 F.3d at 356, the court will address the issue of dischargeability in some detail in an effort to preclude any continued litigation of the issue of dischargeability.

## II. Dischargeability

The filing of a voluntary petition constitutes an order for relief. 11 U.S.C. § 301. A Chapter 7 discharge discharges an individual debtor from "all debts that arose before the date of the order for relief," except for the debts specified in Section 523 of the Bankruptcy Code. 11 U.S.C. § 727(b). Therefore, in order to be discharged, a debt must arise pre-petition and not be excepted from discharge under Section 523.

### A. The Lump Sum Obligation is a Pre-petition Claim

The court must first determine whether the lump sum obligation imposed upon the Plaintiff by a post-petition state court decree arose pre-petition or post-petition, where the state court entered the divorce decree before the debtor filed bankruptcy. The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

In determining when a "claim arises for bankruptcy purposes, reference is to be made to federal bankruptcy law rather than to state law." *Butler v. NationsBank, N.A.,* 58 F.3d 1022, 1029 (4th Cir.1995); *Grady v. A.H. Robins Co.,* 839 F.2d 198, 201–03 (4th Cir.1988). In the Fourth Circuit, a claim "arises" when the act giving rise to liability occurs. *Grady,* 839 F.2d at 203 (holding that a tort claim arises "when the acts constituting the tort of breach of warranty [or like claim] have occurred."), *cert. dismissed sub nom. Joynes v. A.H. Robins Co.,* 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988); *Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.),* 64 F.3d 141, 144 (4th Cir.1995) ("Congress intended to adopt the broadest possible definition of the term 'claim,' so that a bankruptcy case would deal with all of the debtor's legal obligations."); *Teates v. Kuranda (In re Kuranda),* 122 B.R. 264, 268 (Bankr.E.D.Va. 1990) ("All that is necessary is that a 'right to payment' may arise."). In turn, the Supreme Court describes a "right to payment" as "nothing more nor less than an enforceable obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

The lump sum obligation constitutes a claim within the meaning of 11 U.S.C. § 101(5). The fact that Defendant's "right to payment" as of the petition date may have been unliquidated, contingent, unmatured, or disputed does not change this determination. *Grady,* 839 F.2d at 201–02 (finding that Section 101(5)(A) "provides for a 'right to payment' whether or not 'such right' is 'contingent.' "); *see In re Johns–Manville Corp.,* 57 B.R. 680, 687–88 (Bankr.S.D.N.Y.1986) ("Damages which are considered unmatured, unliquidated and contingent, clearly fall within the definition of a claim.... At this juncture [plaintiffs'] claims are contingent and unliquidated because there has been no determination yet in the state court actions on their possible liability.").

In *Grady,* the injuries to the plaintiff, which arose from her use of a Dalkon Shield, did not manifest themselves until after the manufacturer petitioned for bankruptcy. 839 F.2d at 199. The plaintiff argued that, under state law, her claim

arose post-petition, when she knew or should have known of her injuries. *Id.* at 201. The court, however, held that the plaintiff had a pre-petition claim, despite it being "undoubtedly 'contingent.'" *Id.* at 202–03. In so holding, the court stated that there need not "be a right to the immediate payment of money in the case of a tort or allied breach of warranty or like claim ... in order to constitute a claim," and went on to explain that "Congress intended that the definition of claim in the [Bankruptcy] Code be as broad as possible, noting that 'the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy.'" *Id.* at 200 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 21–22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6266, 5787, 5808).

In this case, the underlying conduct giving rise to the claim occurred prior to the petition date. That is, prior to the petition date, the parties married, the wife filed for divorce, and the Circuit Court entered the Final Decree of Divorce. The Commissioner did not make his recommendations concerning spousal support, nor did the Circuit Court to enter its Decree concerning the same, prior to the petition date. However, the failure of either the Commissioner or Circuit Court to make conclusive findings concerning the actual award of spousal support and equitable distribution is not the conduct giving rise to the claim, for the pendency of these findings only kept the claim contingent as of the petition date.

Finally, while divorce proceedings and federal tort litigation may seem wholly dissimilar at first glance, they are similar in that no party in a divorce proceeding, nor any party involved in tort litigation, are guaranteed any form of financial settlement. Therefore, the contingent nature of Defendant's claim in this case, like the contingent nature of the plaintiff's claim in *Grady*, does not change the fact that the act giving rise to the liability occurred pre-petition. Therefore, absent an applicable exception, the pre-petition debt is dischargeable. *River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833, 836 (4th Cir.) (discussing the exception to discharge arising under Section 524(a)(2)), *cert. denied*, 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994).

## B.  The Lump Sum Obligation is Excepted from Discharge

The Defendant contends that the lump sum obligation is excepted from the Plaintiff's discharge because it is in the nature of spousal support. For cases commenced in 1996, a debt owed to a spouse or former spouse or a debt to be paid to a third party in the nature of alimony, maintenance, or support pursuant to a divorce decree is excepted from discharge under Section 523(a)(5). *In re Long*, 794 F.2d 928, 930 (4th Cir.1986). Section 523(a)(5) sets forth three requirements to except a marital obligation from discharge: (1) the debt must be in the nature of alimony, maintenance or support; (2) the debt must be owed to a former spouse or child; and (3) the debt must be in connection with a separation agreement, divorce or property settlement agreement. 11 U.S.C. § 523(a)(5) (1996). The parties do not dispute that the second or third elements are satisfied. Therefore, the only issue before the court is whether the lump sum obligation is in the form of support.

Whether or not the lump sum obligation is in the nature of support is a matter of federal bankruptcy law, rather than state law. *Long*, 794 F.2d at 930 (citing *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984)). The party seeking to

establish an exception to the dischargeability of a debt bears the burden of proof. *Long,* 794 F.2d at 930 (citing Bankruptcy Rule 4005).

Under federal bankruptcy law, the critical determination in classifying indebtedness as support or division of property is the intent of the parties at the time of the execution of the separation agreement. *Tilley v. Jessee,* 789 F.2d 1074 (4th Cir. 1986). The intent of the trier of fact is dispositive when the issue of alimony, support and division of property is before a judge or jury. *Long,* 794 F.2d at 931; *Hirschler, Fleischer, Weinberg, Cox & Allen v. El–Amin (In re El–Amin),* 145 B.R. 836, 838 (Bankr.E.D.Va.1991). If proof of intent is clear, then the determination of intent will control the classification of the obligation. *Id.* at 1078 n. 4; *Melichar v. Ost,* 661 F.2d 300, 303 (4th Cir.1981) (citing *Shacter v. Shacter,* 467 F.Supp. 64 (D.Md. 1979)), aff'd, 610 F.2d 813 (4th Cir.1979) (unpublished); *In re Sledge,* 47 B.R. 349 (E.D.Va.1981).

In this case, the parties submitted the issues of spousal support and equitable distribution to the Circuit Court, which later referred the issues to the Commissioner for his recommendations. Therefore, the issue before the court is the intent of the Circuit Court in awarding the lump sum obligation. *See Long,* 794 F.2d at 931 (holding that the intent of the jury, which determined issues of alimony and property division, controlled the classification of any obligation); *see also Beaton v. Zerbe (In re Zerbe),* 161 B.R. 939, 940 (E.D.Va.1994) (finding that when a circuit court's final decree follows a commissioner's report, the report may be probative of the circuit court's intent). Factors relevant to a determination of intent include the language and substance of the judgment, the financial circumstances of the parties, and the role of the obligation. *Catron v. Catron (In re Catron),* 164 B.R. 912, 919 (E.D.Va.1994), aff'd, 43 F.3d 1465 (4th Cir.1994).

The Decree and Commissioner's report classify the lump sum obligation as alimony and spousal support, respectively.[8] The Decree also states that the "lump sum of spousal support ... is *specifically* in addition to the periodic payment [of spousal support]." (Decree 2)(emphasis added). These designations are significant because Virginia law treats spousal support and equitable distribution differently[9] and because the Circuit Court entered its Decree after hearing Plaintiff's exceptions to the Commissioner's report and plea in bar, both of which argued against awarding the lump sum obligation post-discharge. Therefore, it cannot be argued that the Circuit Court was unaware of the consequences of the language of the Decree. Consequently, the language and substance of the Decree and Commissioner's report support classifying the lump sum obligation as spousal support.

Next, in determining the financial circumstances of the parties, courts have considered factors such as work experience, potential earning power and business opportunities. *Brunson v. Austin (In re Austin),* 271 B.R. 97, 108 (Bankr.E.D.Va. 2001). According to the Commissioner's report, the Defendant received significantly less education than the Plaintiff, lacked the ability to provide much in the way of financial resources, and earned a third or less than the Plaintiff. (Comm. Report 6)

---

8. In Virginia, "alimony" and "spousal support" are used interchangeably. *See Brown,* 5 Va.App. at 246, 361 S.E.2d at 368 (referring to a spousal support award as alimony).

9. *See supra* footnote 1.

The Plaintiff also had experience running a sporting goods store and restaurant, whereas the Defendant "provided in excess of 75% of the nonmonetary contribution to the family, while lacking the ability to provide much in the way of financial resources." *Id.* Therefore, the financial circumstances of the parties at the time of the decree evidence that the lump sum obligation is in the nature of support, because the Plaintiff had greater work experience, potential earning power, and business opportunities than the Defendant.

Finally, in determining the function of the obligation, courts often consider whether the contested obligation serves to provide necessities, such as food, clothing, and shelter. *In re Catron,* 164 B.R. at 919 (citing *Kettner v. Kettner,* 1991 U.S. Dist. LEXIS 21130, 1991 WL 549386, at *2 (E.D.Va. Nov. 19, 1991)); *see In re Herbert,* 304 B.R. 67 (Bankr.E.D.N.Y.2004) (finding $105,000 lump sum payment related to the division of assets was nondischargeable support where the funds were necessary for plaintiff's basic needs). At the time of divorce, the couple lacked any significant assets due to the actions of Plaintiff, shared significant debt, and had lost their marital residence to foreclosure. The Defendant, as discussed above, also lacked the ability to provide much in the way of financial resources and claims that the failure of her husband to pay spousal support, coupled with her liability on joint debts, forced her into bankruptcy. The Commissioner's report supports this allegation, having recommended the lump sum award in order to help eliminate her portion of the joint debt. As such, it is clear that the lump sum award served to provide the Defendant with the necessary funds to remove herself from the significant joint debt for which she remained responsible, such that she would be able to provide for her own basic needs.

In awarding the lump sum obligation, the Circuit Court intended the award to be in the form of spousal support. Therefore, this court concludes that the pre-petition lump sum obligation is in the nature of spousal support, which is excepted from discharge under 11 U.S.C. § 523(a)(5) (1996).

## CONCLUSION

The Plaintiff could have properly raised and did, in fact, raise the issue of dischargeability in the state court proceeding, therefore, the Plaintiff is precluded from asserting that the debt is dischargeable. Because the lump sum obligation is excepted from discharge, the Plaintiff's claims for damages for the violation of the discharge injunction fail. Accordingly, it is

## ORDERED:

That the Plaintiff's Complaint, which seeks a declaration that the Plaintiff received a discharge of certain debt owed to the Defendant as well as damages for violation of the discharge injunction, is denied. It is

## FURTHER ORDERED:

That the Plaintiff's Complaint is dismissed, with prejudice.