**In re Leslie Lawrence LUDWIG, Debtor.**

No. 12–51167.

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

Feb. 25, 2013.

Heidi B. Shafer, Cox Law Group, Lynchburg, VA, for Debtor.

## MEMORANDUM DECISION SUSTAINING DEBTOR'S OBJECTION TO CLAIM 8–1

REBECCA B. CONNELLY, Bankruptcy Judge.

On February 6, 2013, the Court held a hearing on Leslie Ludwig (the "Debtor")'s objection to the priority status of claim number 8 held by Renee M. Miller, the Debtor's former spouse. The Debtor asserts that Ms. Miller's claim is not entitled to priority status because the debt stems from a property settlement agreement between the parties pursuant to their divorce in 2004. Ms. Miller has alleges that her claim is entitled to priority status because the debt owed is based on a domestic support obligation that is in the nature of alimony, support, or maintenance under 11 U.S.C. (the "Bankruptcy Code") § 507(a)(1)(A). After considering the evidence provided at the hearing and the arguments of the parties, the Court took the matter under advisement. Based on that evidence, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Debtor and Ms. Miller were married on June 20, 1987. During the marriage, the couple had two children, Lesley Renee and Savannah Lynn. On November 1, 2003, the couple separated. Shortly after the separation, the couple entered into a Separation and Property Settlement Agreement (the "Agreement"), that attempted to dispose of issues such as custo-

dy, support and assignment of debts. The Agreement specifically assigned certain joint, marital debts to the Debtor. It is Ms. Miller's position that this arrangement was how she chose to receive her support from the Debtor following their separation. Following a year of continuous separation, Ms. Miller was granted a divorce *a vincula matrimonii* on November 23, 2004. The divorce decree ratified and incorporated the Agreement. Following the divorce, the Debtor failed to pay the debts assigned to him under the Agreement. Based on the evidence presented at the hearing, Ms. Miller paid these debts and subsequently obtained a judgment from the Circuit Court of Shenandoah County against the Debtor for non-payment of his obligations under the Agreement. The Circuit Court Order was entered on February 17, 2010 for judgment in the amount of $8,908.04 with interest and additional fees and costs of $450.00. This Order required the Debtor to pay Ms. Miller $250.00 per month until the judgment was paid in full. According to statements made by Ms. Miller at the hearing, the Debtor made payments totaling $1,500.00 on this judgment. Mr. Ludwig filed his Chapter 13 petition on August 31, 2012. As of the petition date, the Debtor owed approximately $12,220.82 on the judgment to Ms. Miller. The Debtor has since remarried.

### CONCLUSIONS OF LAW

Section 507(a)(1)(A) of the Bankruptcy Code provides that allowed unsecured claims for domestic support obligations owed to a former spouse as of the petition date are entitled to first priority. The question before the Court is whether Ms. Miller's claim is for a domestic support obligation.

The Bankruptcy Code defines a domestic support obligation as a debt that is owed to or recoverable by a former spouse in the nature of alimony, maintenance, or support of such former spouse, established prior to the filing of the bankruptcy case, and that has not been assigned to a nongovernmental entity. 11 U.S.C. § 101(14A). As this Court has determined previously, an obligation must satisfy the requirements of Code section 101(14A) to be given priority treatment as a domestic support obligation. *See In re Cooke*, 455 B.R. 503, 505 (Bankr.W.D.Va. 2011). As the party seeking priority, Ms. Miller has the burden of persuading this Court that her obligation meets the requirements of section 101(14A). *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir.2004) (finding that the claimant bears the burden to proof as to validity and amount of the claim once the debtor has rebutted the presumption); *In re Austin*, 271 B.R. 97, 105 (Bankr.E.D.Va.2001)[1] (finding that former spouse, who was objecting to confirmation of debtor's Chapter 13 plan on the ground that said plan failed to pay her claim in full, bore the burden of proving that claim at issue is actually in the nature of alimony, maintenance, or support) (citing *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986)). In making this determination, the critical question the Court must answer is whether the parties intended the obligation as alimony, support, or maintenance at the time the sepa-

---

[1]. Although the passage of the 2005 BAPCPA Amendments altered the structure of 11 U.S.C. § 507(a)(1)(A) and added 11 U.S.C. § 101(14A) to the Bankruptcy Code, the cases interpreting the definition of domestic support obligation all looked at whether the underlying obligation was in the nature of alimony, support, or maintenance. As the 2005 BAPCPA Amendments incorporated this into the definition of domestic support obligation in section 101(14A), these earlier cases are still applicable and relevant today. *See In re Krueger*, 457 B.R. 465, 474 (Bankr.D.S.C. 2011); *In re Mirea*, 2012 WL 3042239, *6 n. 4 (Bankr.E.D.Va.2012).

ration agreement was entered. *Tilley*, 789 F.2d at 1078 n. 4; *In re Monsour*, 372 B.R. 272, 281 (Bankr.W.D.Va.2007); *Austin*, 271 B.R. at 105. If the intent of the parties was that the obligation was merely a division of property, then the obligation is not a domestic support obligation.

■ In determining whether the parties intended the obligation to be in the nature of alimony, support, or maintenance, courts have looked at four factors for guidance: (1) the language and substance of the agreement; (2) the relative financial position of the parties when they entered the agreement; (3) the function of the obligation within the agreement; and (4) evidence of overbearing at the time of the agreement. *Compare Austin*, 271 B.R. at 106; *and Mirea*, 2012 WL 3042239 at *6; *with Monsour*, 372 B.R. at 281 (applying three of the four factors). Based on the evidence, arguments and record in the case, the Court is unable to effectively weigh factors (2) and (4). In particular, the Court has no information regarding the parties' relative financial positions at the time they entered the Agreement. Furthermore, the Court has no information suggesting evidence of overbearing or that would contradict the parties' assertion in paragraph XV of the Agreement that the parties entered the Agreement voluntarily and without fraud, misrepresentation, duress, or undue influence. As such, factors (1) and (3) are all that remain before the Court for analysis.

■ With regard to the language and substance of the agreement, courts have considered the following criteria: labels; details regarding the payments; the context; and finally, what is left out of the agreement. Specifically, labels are significant, but not dispositive; the method, manner, and recipient of the payments are important; context is illustrative; and what is missing can be as important as what is included. *Austin*, 271 B.R. at 106–7 (citing cases).

■ In the instant case, the debt owed Ms. Miller arose from Debtor's failure to meet his obligations under paragraph V of the Agreement entitled, "Existing Debts of the Parties."[2] Under that provision of the Agreement, Debtor was responsible for paying certain joint debts. Debtor was not to pay Ms. Miller, but rather make monthly payments directly to the creditors. The Debtor was assigned five joint debts. Of the five debts expressly assigned to the Debtor, three of the debts relate to a 2004 Ford truck. These debts also appear in the section entitled, "Division of Property." The other two debts are joint credit card obligations on a Visa and a MasterCard. Ms. Miller was assigned the remainder of the joint debts; however, most of those debts appear to be related to the contemporaneous assignment of the marital residence and a 2003 Nissan Maxima to Ms. Miller. In addition to the terms of the "Existing Debts" provision, the rest of the agreement is illustrative. The "Division of Property" provision is the longest provision within the Agreement. The parties waived spousal support on two separate occasions, and waived child support. Throughout the Agreement, each benefit is coupled with a corresponding obligation. The Agreement in its entirety lacks any provision in which one spouse receives a benefit without incurring a detriment. In addition, the Agreement

---

**2.** That section reads, "Each party agrees to be solely responsible for outstanding debts incurred in his or her name alone. Husband shall be responsible for payments on 2004 Ford F250 Pickup Truck, Providian Visa Card payments, Providian Master Card payments, and for automobile insurance and personal property taxes for the above vehicle." *See* Claim 8–1, *In re Ludwig*, No. 12–51167 (Bankr. W.D. Va. August 31, 2012).

lacks any provision for the other's general welfare.

 With regard to the function of the obligation within the Agreement, courts have generally looked to see if the obligation serves to provide for the common necessities of the other spouse. *Monsour,* 372 B.R. at 282; *Mirea,* 2012 WL 3042239 at *7. In making this determination, courts have considered whether the obligation is for past or future obligations, whether it allocates joint debts, or whether it divides property. *Austin,* 271 B.R. at 108 (citing cases).

The underlying obligation in the instant case is based on joint obligations the parties had at the time of their divorce. As such, the Debtor's obligation was to pay for past debts the couple owed. Furthermore, paragraph VI of the Agreement, entitled "Future Debts," provided that all future debts would be incurred by the parties individually. In addition, the majority of the debts assigned the Debtor related to property that was subject to the "Division of Property" section of the Agreement. All these factors suggest that the purpose of the obligation was not to provide common necessities for Ms. Miller, but rather, to provide the parties with an equitable division of the marital debts. Ms. Miller's own words suggest this is the case. In her response to Debtor's objection to claim, Ms. Miller wrote, "I chose to have [the Debtor] pay his portion of our marital debt instead of collecting child support or spousal support." Response to Objection of Claim, *In re Ludwig,* No. 12–51167 (Bankr.W.D.Va. August 31, 2012), ECF No. 34. In light of the language and substance of the Agreement, coupled with the lack of supportive purpose, the Court finds that the obligation, and the Agreement as a whole, exhibits a quid-pro-quo characteristic that is more akin to a property settlement and not in the nature of alimony, support, or maintenance. As the Court finds that the obligation is not in the nature of alimony, support, or maintenance, Ms. Miller has failed to establish the necessary elements of a domestic support obligation under 11 U.S.C. § 101(14A). Therefore, Ms. Miller's claim is not for a domestic support obligation and, thus, is not entitled to priority status under 11 U.S.C. § 507(a)(1)(A). The Court will issue a corresponding order in accordance with the above decision.